IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TODRICK W. ARRINGTON, JR.,

      Plaintiff

      v.

CITY OF ERIE POLICE
DEPARTMENT, MATTHEW J.
GUSTAFSON, JERRY STEVENS, ERIE
COUNTY PROBATION OFFICE,
ALEX KISSELL, ASHLEY CLARK,
ERIE COUNTY DISTRICT
ATTORNEY'S OFFICE, EMILY
DOWNING, KHADJA HORTON, ERIE
COUNTY PRISON, JOHN DOES (ERIE
COUNTY PRISON GUARDS),

      Defendants

NO. 1:22-cv-00226

JURY TRIAL DEMANDED

## RULE 12 MOTION TO DISMISS

AND NOW, come the Defendants, City of Erie, Matthew J. Gustafson and Jerry Stevens,

and in support of the instant Rule 12 Motion to Dismiss state as follows.

### PROCEDURAL HISTORY

1.     Plaintiff commenced this action by the filing of a Complaint in the Court of

Common Pleas of Erie County, Pennsylvania, on or about June 17, 2022.

2.     On or about July 19, 2022, the Moving Defendants filed a Petition for Removal of

Civil Action in the instant court and at the same time filed a Notice of Removal with the Court of

Common Pleas of Erie County, Pennsylvania. [*ECF 1*]

3.     After the case was removed to federal court, the parties entered into a Stipulation

[*ECF 2*] by which Plaintiff would file an Amended Complaint within 30 days of the filing of the

Stipulation.

4.     On or about August 26, 2022, Plaintiff filed his Amended Complaint. [*ECF 3*]

## FACTUAL ALLEGATIONS RAISED BY PLAINTIFF

5.     On May 30, 2020, a peaceful protest/march occurred in the City of Erie but at some point that protest turned violent and caused property and other damage at various locations within the City of Erie.  [*ECF 3, ¶¶13-17*]

6.     Part of the vandalism that occurred during the march of May 30, 2020-May 31, 2020, included damage to three double parking meters located in the 600 block of State Street in the City of Erie.  [*ECF 3, ¶17*]

7.     Plaintiff, Todrick Arrington, denies that he was anywhere near the area where the peaceful protest and subsequent vandalism occurred on either May 30 or May 31, 2020.  [*ECF 3, ¶¶18 and 19*]

8.     Detective Matthew Gustafson, a detective with the City of Erie Police Department, was assigned to investigate the damage to the parking meters referenced above. [*ECF 3, ¶20*]

9.     Detective Gustafson reviewed a video taken by a civilian named Tyquan Young (referred to in Plaintiff's Amended Complaint as the "Young video.")  [*ECF 3, ¶¶21-22*]

10.     Detective Gustafson also reviewed a video taken prior to the incident damaging the parking meters.  Plaintiff refers to this video as the "Vice video."  [*ECF 3, ¶23*]

11.     After reviewing these videos, Detective Gustafson concluded that an individual seen in the Young video standing over the damaged parking meters resembled a person shown in the Vice video.  Therefore, Detective Gustafson extracted a still photo from the Vice video in an attempt to identify the individual.  [*ECF 3, ¶¶24 and 25*]

12.     Detective Gustafson sent the still photo referenced in the preceding paragraph to other members of the City of Erie Police Department asking if they recognized the person in the

2

photo. In response, Detective Stevens indicated that "*he believed the individual [pictured] to be Todrick Arrington, Jr.*"[1]  [*ECF 3, ¶¶25 and 26*]

13.     Detective Gustafson then sent the still photograph to the Erie County Probation Department and asked whether the probation officers identified anyone from this photograph. According to Arrington, Probation Officers Alex Kissell replied that "he believed it was [Arrington]."[2]  [*ECF 3, ¶27*]

14.     Probation Officer Ashley Clark also identified the person in the photograph as Todrick Arrington, Jr.  [*ECF 3, ¶28*]

15.     From these identifications, which Arrington characterizes as "mistaken, "Detective Gustafson drafted an Affidavit of Probable Cause and obtained an arrest warrant for Mr. Arrington.  [*ECF 3, ¶¶32, 33; see also Affidavit of Probable Cause attached to Plaintiff's Amended Complaint.*]

16.     Plaintiff makes a number of allegations insisting that he was not the individual identified from the video and/or photograph, that a tattoo on his right hand and wrist was clearly not visible in the video and photograph, that the police and probation officers were clearly mistaken in identifying him, that the Plaintiff was not present on the night of this incident and that he produced evidence in the form of an alibi defense but all of the information regarding his innocence was ignored by the police officers, the prosecutors and other individuals.  [*ECF 3, ¶¶29-42*]

---

[1] In paragraph 26 of his Amended Complaint, Arrington placed this allegation about the identification by Detective Stevens in quotation marks and cited the Affidavit of Probable Cause as the source of the quote. However, the Affidavit of Probable cause actually states: "Off. J. Stevens contacted me and told me that he recognized the person as the def. Toderick (sic) Arrington."

[2] To the extent that this quote also supposedly came from the Affidavit of Probable Cause, it again has been misquoted.  The Affidavit clearly states that the probation officers "both identified the Def. in the photo as Toderick (sic) Arrington."

17.     Arrington went to trial on the charges filed in August of 2021 and was acquitted. [*ECF 3, ¶43*]

### CLAIMS RAISED AGAINST CITY OF ERIE, GUSTAFSON and STEVENS

18.     In Count I of his Amended Complaint, Plaintiff sets forth a "Section 1983" claim against Detectives Gustafson and Stevens under the Fourth and Fourteenth Amendments essentially alleging that arrested and prosecuted him without probable cause. Mr. Arrington also claims, without any specificity, that Defendants fabricated and/or manufactured evidence; prosecuted him with knowledge that he was not depicted in the video and photograph; withheld unspecified evidence; allowed him to be incarcerated despite knowing he was innocent; and encouraged probation officers and others to misidentify the Plaintiff. [*ECF 3, ¶¶47-50*]

19.     In Count II, Plaintiff alleges a *Monell* claim against the City of Erie based upon unnamed policies, practices and customs (*ECF 3, ¶52)*, a failure to train, supervise or discipline its police officers regarding the proper way to investigate and prosecute criminal activity, to avoid racial profiling, the proper assessment of probable cause, the assembling and evaluating of evidence, the failure to share exculpatory evidence and the "avoidance of improper and deficient police work." [*ECF 3, ¶¶52-56*]

20.     In Count III, Plaintiff levels claims of false arrest and imprisonment against Detectives Gustafson and Stevens as well as the City of Erie by alleging that Arrington was falsely arrested without probable cause and/or "arrested him with a warrant that was obtained illegally." [*ECF 3, ¶¶58-60*]

21.     In Count VI, Plaintiff names Detectives Gustafson and Stevens along with Assistant District Attorneys Downing and Horton in maliciously prosecuting the Plaintiff - apparently without probable cause, by failing to produce unnamed exculpatory evidence and by proceeding with his prosecution despite knowledge of his innocence. [*ECF 3, ¶¶72-74*]

4

22.     In Count IIV (sic), Plaintiff alleges a conspiracy amongst all Defendants,

including Detectives Gustafson and Stevens and the City of Erie, consisting of:

      a.     "Targeting or singling out Plaintiff to frame for a crime;

      b.     Intentionally creating, misinterpreting and misusing available evidence in order to falsely accuse Plaintiff of a crime;

      c.     Actively or passively agreeing in the identification of Plaintiff as the perpetrator of a crime and as the individual pictured in the video tape;

      d.     Knowingly using or assenting to the use of information which was misleading or false when there was no evidence of the Plaintiff's wrongdoing and insufficient evidence to support a warrant for arrest;

      e.     Participating in manufacturing and creating evidence to support the issuance of an arrest warrant for Plaintiff with knowledge that this constituted a misrepresentation to a court of law;

      f.     Allowing Plaintiff to be arrested and detained without sufficient evidence of his involvement in the alleged crime;

      g.     Maintaining and continuing imprisonment and incarceration of the Plaintiff for over one year while he awaited trial for a crime that Defendants knew that he did not commit;

      h.     Pursuing prosecution and trial against Plaintiff despite knowing that he did not commit the crime for which he was being prosecuted; and

      i.     Withholding or concealing evidence that would have exonerated Plaintiff and lead to his release from prison." [ECF 3, ¶¶82-85]

**DOCUMENTS INTEGRAL TO OR EXPLICITLY RELIED UPON BY PLAINTIFF**

23.     Because the Plaintiff's original and Amended Complaint explicitly rely upon or

reference documents that are integral to the claims raised in the Complaint, the Defendants attach

hereto the following exhibits for consideration by this Court in deciding this Rule 12 Motion:

> a.     The Tyquan Young video (Exhibit A);
>
> b.     The Vice video (Exhibit B);
>
> c.     One photograph taken from the Vice video (Exhibit C); and
>
> d.     A copy of the Police Criminal Complaint with Affidavit of Probable
>
> Cause drafted by Detective Gustafson and approved by Magisterial District Judge
>
> Timothy Beveridge dated June 4, 2020 (Exhibit D).

24.     The above exhibits are integral to or explicitly relied upon by Plaintiff in his

Amended Complaint and therefore may be considered without converting the instant Motion to

Dismiss into one for summary judgment.  See *Schmidt v. Skolas*, 770 Fed.3d 241, 249 (3rd Cir.

2014)(quoting *In Re: Burlington Coat Factory*, 114 Fed.3d 1410 (3rd Cir. 1997).

**INFORMATION GATHERED BY POLICE and FORMING THE BASIS OF
PROBABLE CAUSE**

25.     After the rioting of May 30-31, 2020, Detective Gustafson obtained the Tyquan

Young video.  (Exhibit A)

26.     The Young video is approximately 26 minutes long and the incident in which the

City of Erie's parking meters were broken occurs at approximately the 19.57 mark.  At that time,

the video did not capture the actual breaking of the parking meters; however, you can hear noises

associated with it.

6

27.     Earlier in the Young video, at approximately 18.43 minutes, a person wearing a dark green hooded sweatshirt with his hood up and camouflage pants appears on State Street between South and North Park Rows. (Exhibit A, 18.43 minute)

28.     At approximately the 19.48 minute mark, the person described in the preceding paragraph is seen in Exhibit A walking toward the parking meter. (Id. at 19.48)

29.     At approximately 19.57, sounds can be heard that are consistent with the parking meter being vandalized/broken. (Id. at 19.57)  At approximately 19.59, Exhibit A shows a white female in a white shirt facing the location of the parking meter stating, "That's not what we're here for." (Id. at 19.59)

30.     In Exhibit A, at approximately 20.05, the person wearing the dark green hooded sweatshirt and camouflage pants is seen standing over the broken parking meter. (Id. at 20.05)

31.     At 20.12 on Exhibit A, another individual picks up the broken parking meter while the person in the green hooded sweatshirt and camouflage pants is standing nearby. The meter is then smashed into the sidewalk at approximately 20.14 minutes. (Id. at 20.12-20.14)

32.     The broken parking meter is then clearly shown on the sidewalk at approximately 21.18 minutes. (Id. at 21.18)

33.     Exhibit A shows the man with the green hooded sweatshirt and camouflage pants wearing his light blue surgical mask down below his mouth thereby revealing facial hair. (Id. at 22.35)

34.     At approximately 22.57 minutes, it appears that people in the crowd are having a disagreement and a bystander can be heard discussing vandalism that just occurred. (Id. at 22.57)

35.     The Tyquan Young video (Exhibit A) revealed a young African American male, with a thin/lean build, wearing a dark green hooded sweatshirt with the hood up, camouflage pants, dark shoes and a light blue surgical mask which was sometimes worn over his mouth and sometimes worn below his mouth. This individual also was seen to have facial hair.

36.     Detective Gustafson reviewed the Vice video (Exhibit B) which depicted a peaceful march and protest that occurred hours before the vandalism referenced in the preceding paragraphs. (See Exhibit B.)

37.     The Vice video, which is approximately 9 minutes 40 seconds long, shows individuals marching along the area of South Park Row and State Street, near City Hall, in the City of Erie. (Exhibit B)

38.     At approximately the 8.36 minute mark, an individual is seen in the crowd wearing a dark green hooded sweatshirt with the hood up, camouflage pants, dark shoes and a light blue surgical mask down or under his chin exposing his face and revealing facial hair. This individual is a young African American male with a thin/lean build. (See Exhibit B, 8.36 minutes and continuing.)

39.     Because the individual depicted at the 8.36 mark in Exhibit B looked exactly like the individual shown in the Young video (Exhibit A) and believed to have been involved in the damage to the parking meters, Detective Gustafson extracted a photograph from the Vice video (Exhibit C) which clearly shows the individual of interest and his face.

40.     As alleged in Paragraphs 25 and 26 of the Plaintiff's Amended Complaint, Detective Gustafson sent the still photograph (Exhibit C) to other members of the Erie Police Department asking if they recognized the person depicted. In response, Detective Stevens indicated that he believed the individual pictured was Todrick Arrington.

41.     Detective Gustafson then sent the still photograph (Exhibit C) to the Erie County Probation Department and asked whether the probation officers identified anyone from the photograph. According to Plaintiff, Probation Officers Kissell and Clark identified Todrick Arrington as the person in the photograph. (See *ECF 3, ¶¶27 and 28.*)

42.     As can be seen in the Criminal Complaint and Affidavit of Probable Cause, Detective Gustafson charged Todrick Arrington with one count of Riot, 18 Pa. C.S.A. §5501and Criminal Mischief, 18 Pa. C.S.A. §3304.

43.     Under Pennsylvania law, riot is defined as "A person is guilty of riot, a felony of the third degree, if he participates with two or more others in a course of disorderly conduct: (1) with intent to commit or facilitate the commission of a felony or misdemeanor; (2) with intent to prevent or coerce official action; or (3) when the actor or other participant to the knowledge of the actor uses or plans to use a firearm or other deadly weapon." *18 Pa. C.S.A. §5501.*

44.     Criminal mischief is defined under Pennsylvania law as "A person is guilty of criminal mischief if he: (1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives or other dangerous means listed in Section 3302(a) of this Title (relating to causing or risking catastrophe); (2) intentionally or recklessly tampers with tangible personal property of another so as to endanger person or property; (3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat; (4) intentionally defaces or otherwise damages tangible public property or tangible property of another with graffiti by use of any aerosol spray-paint can, broad-tipped indelible marker or similar marking device; (6) intentionally damages real or personal property of another; or intentionally defaces personal, private or public property by discharging a paint ball gun or paint ball markers at that property." *18 Pa. C.S.A. §3304.*

45.     In the case at bar, based upon the events depicted in the Tyquan Young and Vice videos (Exhibits A and B) and based upon the positive identification of Todrick Arrington as the person depicted in the video, Detective Gustafson had probable cause to file the criminal charges against Mr. Arrington, as a matter of law.

## BASIS FOR DISMISSAL OF ALL CLAIMS AGAINST DEFENDANTS GUSTAFSON, STEVENS and CITY OF ERIE

46.     Based upon the information possessed by Detective Gustafson as set forth in his Criminal Complaint and Affidavit of Probable Cause and based upon the exhibits referenced above, Detective Gustafson had probable cause, as a matter of law, for the charges filed against Todrick Arrington.  Therefore, all claims of False Arrest, False Imprisonment and Malicious Prosecution raised against the City of Erie and Detectives Gustafson and Stevens must be dismissed with prejudice.

47.     Detective Stevens' only role in this matter was to identify Todrick Arrington from the photograph presented to him and therefore he did not have personal involvement in any of the alleged constitutional deprivations.

48.     Detective Stevens' only role in this this matter was to identify Todrick Arrington from the photograph presented to him and in that role, Detective Stevens did not act as a state actor.  Therefore did not violate any of Mr. Arrington's constitutional rights.

49.     Detective Stevens' only role in this matter was to identify Todrick Arrington from the photograph presented to him and, perhaps in testifying at trial and in any pre-trial proceeding. Accordingly, Detective Stevens is afforded absolute witness immunity.

50.     To the extent that Detective Stevens is deemed to have been a state actor in his limited role in this matter and/or to the extent that he is not entitled to absolute witness

immunity, Detective Stevens is entitled to qualified immunity based upon his limited actions in the investigation and prosecution of Mr. Arrington.

51.     To the extent that Detective Gustafson lacked probable cause for the filing of charges or the prosecution of Mr. Arrington, he is entitled to qualified immunity because a reasonable officer in his position, after being told by three eyewitnesses that the person depicted in the photograph and suspected of this criminal incident was Todrick Arrington, would not have realized that there was a lack of probable cause.

52.     Plaintiff has failed to identify any specific policies, practices or customs of the City of Erie that resulted in a violation of Mr. Arrington's constitutional rights and therefore the City of Erie must be dismissed as a defendant.

53.     Further, to the extent that Mr. Arrington has adequately plead a constitutional violation, he has not shown established anything more than an isolated, one-time event which fails to support a *Monell* claim against the City of Erie.  Accordingly, the City of Erie is entitled to dismissal, with prejudice.

54.     Plaintiff has failed to identify any specific training, supervision or discipline that it failed to provide to its officers and/or that resulted in a constitutional deprivation to Plaintiff. Therefore, this claim against the City of Erie must be dismissed.

55.     Regarding the allegations that the City of Erie and/or Detectives Gustafson and Stevens fabricated, manufactured, concealed, withheld, created, misinterpreted, misused or failed to produce unnamed evidence, Plaintiff has failed to set forth any factual basis for these allegations and therefore they should not be deemed plausible as required under the Federal Rules of Civil Procedure and the dictates of *Iqbal* and *Twombly*.  Accordingly, these claims must be dismissed.

11

56.     The conspiracy claim in Count IIV (sic) lacks the required specificity as to the alleged actions by each individual Defendant and therefore Plaintiff has failed to state a viable conspiracy claim.  Accordingly, the claims of conspiracy against the City of Erie, Detective Gustafson and Detective Stevens should be dismissed with prejudice.

57.     Because he has already amended his Complaint once, any further amendment of Plaintiff's Amended Complaint should be deemed futile and not be permitted.

58.     In the alternative, and to the extent that the Court permits an amendment of the Amended Complaint, the allegations that the City of Erie and/or Detectives Gustafson and Stevens fabricated, manufactured, concealed, withheld, created, misinterpreted or misused unnamed evidence, said claims are vague, nonspecific and general and therefore Plaintiff should be required to re-plead those claims with specificity by way of a Second Amended Complaint.

**WHEREFORE**, Answering Defendants deny and continue to deny that they are liable to any party or parties under any theory or cause of action and demand judgment in their favor.

Respectfully submitted,

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By _____
Patrick M. Carey, Esquire
717 State Street, Suite 701
Erie, PA  16501
(814) 480-7800

LEGAL/148310131.v1

**IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TODRICK W. ARRINGTON, JR.,

    Plaintiff

    v.

CITY OF ERIE POLICE
DEPARTMENT, MATTHEW J.
GUSTAFSON, JERRY STEVENS, ERIE
COUNTY PROBATION OFFICE,
ALEX KISSELL, ASHLEY CLARK,
ERIE COUNTY DISTRICT
ATTORNEY'S OFFICE, EMILY
DOWNING, KHADJA HORTON, ERIE
COUNTY PRISON, JOHN DOES (ERIE
COUNTY PRISON GUARDS),

    Defendants

NO.  1:22-cv-00226

JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Rule 12

Motion to Dismiss has been served upon the following known counsel of record this _13th_

day of September, 2022, via electronic mail and/or United States First-Class Mail, postage

prepaid:

Peter A. Pentz, Esquire
Pentz Law
2409 State Street
Suite A
Erie, PA  16503
*Attorney for Plaintiff*

G. Michael Garcia II, Esquire
MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN
717 State Street, Suite 701
Erie, PA  16501
*Attorney for Erie County Defendants*

                    Patrick M. Carey, Esquire