**IN THE UNITED STATES COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TODRICK W. ARRINGTON, JR.,

       Plaintiff

       v.

CITY OF ERIE POLICE
DEPARTMENT, MATTHEW J.
GUSTAFSON, JERRY STEVENS, ERIE
COUNTY PROBATION OFFICE,
ALEX KISSELL, ASHLEY CLARK,
ERIE COUNTY DISTRICT
ATTORNEY'S OFFICE, EMILY
DOWNING, KHADJA HORTON, ERIE
COUNTY PRISON, JOHN DOES (ERIE
COUNTY PRISON GUARDS),

       Defendants

NO.  1:22-cv-00226

JURY TRIAL DEMANDED

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

       AND NOW, come the Defendants, City of Erie, Matthew J. Gustafson and Jerry Stevens,

and in support of the instant Brief in Support of Motion to Dismiss state as follows.

       **I.**     **PROCEDURAL HISTORY**

       Plaintiff commenced this action by the filing of a Complaint in the Court of Common

Pleas of Erie County, Pennsylvania, on or about June 17, 2022.

       On or about July 19, 2022, the Moving Defendants filed a Petition for Removal of Civil

Action in the instant court and at the same time filed a Notice of Removal with the Court of

Common Pleas of Erie County, Pennsylvania.  [*ECF 1*]  After the case was removed to federal

court, the parties entered into a Stipulation [*ECF 2*] by which Plaintiff would file an Amended

Complaint within 30 days of the filing of the Stipulation.

       On or about August 26, 2022, Plaintiff filed his Amended Complaint.  [*ECF 3*]

## II.    FACTS ALLEGED BY PLAINTIFF

On May 30, 2020, a peaceful protest/march occurred in the City of Erie but at some point that protest turned violent and caused property and other damage at various locations within the City of Erie. [*ECF 3, ¶¶13-17*] Part of the vandalism that occurred during the march of May 30, 2020-May 31, 2020, included damage to three double parking meters located in the 600 block of State Street in the City of Erie. [*ECF 3, ¶17*] Plaintiff, Todrick Arrington, denies that he was anywhere near the area where the peaceful protest and subsequent vandalism occurred on either May 30 or May 31, 2020. [*ECF 3, ¶¶18 and 19*]

Detective Matthew Gustafson, a detective with the City of Erie Police Department, was assigned to investigate the damage to the parking meters referenced above. [*ECF 3, ¶20*] Detective Gustafson reviewed a video taken by a civilian named Tyquan Young (referred to in Plaintiff's Amended Complaint as the "Young video.") [*ECF 3, ¶¶21-22*] Detective Gustafson also reviewed a video taken earlier in the day, prior to the incident damaging the parking meters. Plaintiff refers to this video as the "Vice video." [*ECF 3, ¶23*]

After reviewing these videos, Detective Gustafson concluded that an individual seen in the Young video standing over the damaged parking meters resembled a person shown in the Vice video. Therefore, Detective Gustafson extracted a still photo from the Vice video in an attempt to identify the individual. [*ECF 3, ¶¶24 and 25*]

Detective Gustafson sent the still photo referenced in the preceding paragraph to other members of the City of Erie Police Department asking if they recognized the person in the photo. In response, Detective Stevens indicated that "***he believed the individual [pictured] to be Todrick Arrington, Jr.***"[1]  [*ECF 3, ¶¶25 and 26*]

_____

[1] In paragraph 26 of his Amended Complaint, Arrington placed this allegation about the identification by Detective Stevens in quotation marks and cited the Affidavit of Probable Cause as the source of the quote. However, the

Detective Gustafson then sent the still photograph to the Erie County Probation

Department and asked whether the probation officers identified anyone from this photograph.

According to Arrington, Probation Officers Alex Kissell replied that "he believed it was

[Arrington]."[2]  [*ECF 3, ¶27*]

From these identifications, Detective Gustafson drafted an Affidavit of Probable Cause

and obtained an arrest warrant for Mr. Arrington.  [*ECF 3, ¶¶32, 33; see also Affidavit of

Probable Cause attached to Plaintiff's Amended Complaint.*]

Plaintiff makes a number of allegations insisting that he was not the individual identified

from the video and/or photograph, that a tattoo on his right hand and wrist was clearly not visible

in the video and photograph, that the police and probation officers were clearly mistaken in

identifying him, that the Plaintiff was not present on the night of this incident and that he

produced evidence in the form of an alibi defense but all of the information regarding his

innocence was ignored by the police officers, the prosecutors and other individuals.  [*ECF 3,

¶¶29-42*]

Arrington went to trial in August of 2021 and was acquitted of all charges.  [*ECF 3, ¶43*]

## III.   CLAIMS RAISED

The claims raised by Plaintiff in his Amended Complaint are set forth in more detail in

the Defendants' Motion to Dismiss.  However, in essence, Mr. Arrington alleges that Detectives

Gustafson and Stevens violated his rights under the Fourth and Fourteenth Amendments by

arresting, charging and prosecuting Plaintiff without probable cause.  Arrington claims that the

---

Affidavit of Probable cause actually states: "Off. J. Stevens contacted me and told me that he recognized the person
as the def. Toderick (sic) Arrington."

[2] To the extent that this quote also supposedly came from the Affidavit of Probable Cause, it again has been
misquoted.  The Affidavit clearly states that the probation officers "both identified the Def. in the photo as Toderick
(sic) Arrington."

Defendants withheld and/or manufactured evidence yet does not identify what evidence was withheld or manufactured. Mr. Arrington contends that the officers knew that he was not the person depicted in the videos and photos but Plaintiff admits that he was the person identified by the witnesses. He alleges that the officers "encouraged" others to misidentify him yet fails to set forth any facts to show how that occurred. Plaintiff levels vague and boilerplate claims against the City alleging non-specific policies, practices and customs that supposedly violated his constitutional rights. Similarly, he alleges that the City failed to train, supervise and discipline its officers in very vague terms such as "the proper way to investigate and prosecute criminal activity, to avoid racial profiling, the proper assessment of probable cause, the assembling and evaluating of evidence, the failure to share exculpatory evidence and the "avoidance of improper and deficient police work."

For the following reasons and based upon the legal authority raised, Plaintiff's claims fail as a matter of law and must be dismissed.

## IV.    LEGAL ARGUMENT AND ANALYSIS

### A.    12(b)(6) Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d. Cir. 1993). When ruling on a defendant's motion to dismiss, a judge must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526-27 (3d. Cir. 2018). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," are insufficient to establish plausible allegations. *Id.*, at 644 (citing *Twombly*, 550

U.S. at 555). Plausibility means "more than a sheer possibility that a defendant has acted

unlawfully." *Id.*, at 662, 678 (citing *Twombly*, 550 U.S. at 544, 570). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*, (citing *Twombly*, 550 U.S.

at 556).

Following *Twombly* and *Iqbal*, a District Court should the following three-step approach

when ruling on a defendant's motion to dismiss:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify
> allegations that, 'because they are no more than conclusions, are
> not entitled to the assumption of truth.' Finally, 'where there are
> well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an
> entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v.
Warminster Twp.*, 629 F.3d 121, 130 (3d. Cir. 2010)).

This determination is a "context-specific task that requires the reviewing court to draw on

its own judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Applying the standard from *Twombly* and *Iqbal*, the Defendants' Motion to Dismiss

should be granted in full. *See e.g. Capetillo v. Prime Care Medical Inc.*, 2014 WL 5393992

(E.D. Pa. 2014); *Schlaybach v. Berks Heim Nursing & Rehabilitation*, 434 F. Supp. 3d 342 (E.D.

Pa. 2020); *Warren v. Prime Care Medical Inc.*, 2017 WL 11508186 (E.D. Pa. 2017). It is well

settled that: "[t]he Federal Rules of Civil Procedure require that a Complaint contain 'a short and

plain statement of the claim showing that the pleader is entitled to relief,' Federal Civil Procedure

8(a)(2), and that each averment be 'concise, and direct,' Federal Civil Procedure 8(e)(1)."
*Scibelli v. Lebanon County*, 219 F.Appx. 221, 222 (3rd Cir. 2007).

### B.    §1983 Actions

Claims brought pursuant to 42 U.S.C. §1983 "impose civil liability upon any person who,
acting under the color of state law, deprives another individual of any rights, privileges, or
immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor
School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that §1983 does not confer any
substantive rights, but merely 'provides a method for vindicating federal rights elsewhere
conferred.'" *Williams v. Pennsylvania Human Relations Comm'n,* 870 F.3d 294, 297 (3d Cir.
2017)(quoting *Hildebrand v. Allegheny Cty.,* 757 F.3d 99, 104 (3d Cir. 2014)).  To establish a
claim under §1983, a plaintiff must establish a deprivation of a federally protected right and that
this deprivation was committed by a person acting under color of state law. *Woloszyn v. County
of Lawrence,* 396 F.3d 314, 319 (3d Cir. 2005).

### C.    Need for Personal Involvement

Defendants in Section 1983 actions "must have personal involvement in the alleged
wrongs to be liable and cannot be held responsible for a constitutional violation which he or she
neither participated in nor approved." *Saisi v. Murray*, 822 F.Appx. 47, 48 (3d Cir. 2020)
(quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations omitted).
Allegations which broadly implicate multiple defendants without delineating individual conduct
are legally insufficient. *Vantassel v. Piccione*, 608 F.Appx. 66, 69-70 (3d Cir. 2015).

Because Detective Stevens' only involvement in this matter was his identification of
Arrington from a photograph and, perhaps in testifying in pre-trial and trial proceedings, his role

6

was merely as a witness. Since Detective Stevens was not personally involved in any
constitutional violation, he is entitled to dismissal from this action, with prejudice.

## D.    Plaintiff's Reliance On Documents And Other Things

As a general matter, a District Court ruling on a motion to dismiss may not consider
matters extraneous to the pleadings. However, in deciding Rule 12 motions, Courts in this
circuit may consider documents integral to or explicitly relied upon in the complaint, *In Re:*
*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)(citations omitted), or
any undisputedly authentic documents that a defendant attaches as an exhibit to a motion to
dismiss if the plaintiff's claims are based on the document. *PBGC v. White Consol. Indus.*, 998
F.2d 1192, 1196 (3d Cir. 1993). An exception to the general rule is that a document integral to
or explicitly relied upon in the complaint may be considered without converting the motion to
dismiss into one for summary judgment. See *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir.
2014) (quoting *In Re: Burlington Coat Factory*, 114 F.3d at 1426).

When ruling upon a Motion to Dismiss Pursuant to Rule 12(b)(6), the Court may
consider "exhibits attached to the complaint, matters of public record, and documents that form
the basis of the claim." *Lum v. Bank of America*, 361 Fed.3d 217, 222 n.3 (3d Cir. 2004) (citing
*In Re: Burlington Coat Factory*, 114 F.3d at 1426). A Court may take judicial notice of
documents filed in other Court proceedings because they are matters of public record. See
*Liberty International Underwriters Can. v. Scottsdale Ins. Co.*, 955 Fed.Sup.2d 317, 325 (D.N.J.
2013).

In the case at bar, Detective Gustafson reviewed the Tyquan Young video (Exhibit A)
which showed some of the rioting and vandalism that occurred in the City of Erie on May 30 and
31, 2020. In this video, the sound of the parking meters being damaged can be heard.

Immediately thereafter, a young African American male wearing camouflage pants and a dark hooded sweatshirt can be seen standing over the damaged meters. Others in the crowd began to argue about the vandalism and their view that "that's not what we're here for." Shortly before and after the parking meters were damaged, the same person can be seen in the video, wearing the same clothing plus a light blue surgical mask.

Gustafson reviewed the Vice video (Exhibit B), which showed the peaceful march and protest that occurred in the afternoon and early evening of May 30, 2020. A young African American male wearing camouflage pants, a dark green hooded sweatshirt, dark shoes and light blue surgical mask down around his neck can be clearly seen. The person appears to be the same person seen in the Tyquan Young video (Exhibit A). His race, approximate age, size, build, and clothing and look identical.

Detective Gustafson extracted a still photo from the Tyquan Young video. The still photo is marked Exhibits C. Gustafson shared the photo marked Exhibit C to other officers at the Erie Police Department and Detective Stevens identified Mr. Arrington as the person in the photo.

Detective Gustafson then shared Exhibit C with Erie County Adult Probation Officers Kissell and Clark, who also identified Mr. Arrington as the person depicted in the photograph.

As can be seen in the Affidavit of Probable Cause (Exhibit D), the positive identification of Mr. Arrington as the person in the photograph helped to form the basis of Detective Gustafson's probable cause for criminal charges against Arrington.

### E.     False Arrest, False Imprisonment And Malicious Prosecution

To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) there was an arrest; and (2) the arrest was made without probable cause. *James v. City of*

8

*Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). A claim for false imprisonment overlaps with a claim for false arrest but they are not synonymous. *Wallace v. Kato*, 549 U.S. 384 (2007); see also *Adams v. Officer Eric Selhorst*, 449 Fed. App'x. 198, 201 (3rd Cir. 2011). Therefore, "Where an officer lacks probable cause to make an arrest, there can be a Fourth Amendment claim for false imprisonment based upon the detention pursuant to the arrest." *Groman v. Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

A claim for malicious prosecution requires a showing that: (1) the defendant initiated criminal proceedings; (2) the criminal proceedings ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Dibella v. Borough of Beechwood*, 407 F.3d 599, 601 (3d Cir. 2005).

## F.   Probable Cause

Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge at the moment the arrest was made are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *Woodyard v. County of Essex*, 514 F. Appx. 177, 183 (3d Cir. PA 2013); quoting *Orsatti v. N. J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). When an arrest is made pursuant to a warrant, a plaintiff must establish a lack of probable cause "by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable

cause." *Woodyard v. County of Essex, supra*; citing *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000).

Police have no obligation to obtain exculpatory evidence prior to initiating a criminal proceeding where the arresting officer was unaware of it at the time of charging. *Waters v. Cheltenham Township*, 700 F. Appx. 149, 153 (3d Cir. 2017) ("Even though the footage ultimately lead to the withdrawal of criminal charges, we still determine whether the proceeding was initiated without probable cause 'based on the information available to officers at the time the arrest was sought.'") Stated another way, an arresting officer is not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already exists. See *Merkle v. Upper Dublin School District*, 211 F.3d 782 (3d Cir. 2000). Once a police officer has discovered sufficient facts to establish probable cause, the officer has no constitutional duty to further investigate in hopes of finding exculpatory evidence. *Patterson v. School District of Philadelphia*, 2000 WL 1020332 (E.D. PA 2000).

The existence of probable cause is an essential element of both false arrest/false imprisonment and malicious prosecution claims, and such claims cannot proceed if probable cause existed to initiate criminal proceedings. *Swope v. City of Pittsburgh*, 90 F. Supp. 3d 400, at 406 (W.D. Pa. Dec. 1, 2014). "Probable cause exists whenever ***reasonably trustworthy*** information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)(emphasis added). A court is permitted to conclude that probable existed as a matter of law if the evidence viewed in favor of the non-moving party reasonably would not support a contrary factual finding. *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 651 (W.D. Pa. 2010) *citing Merkle v. Upper Dublin Sch. Dist.*, 211

F.3d 782, 788-89 (3d Cir. 2000); *See also Paszkowski v. Roxbury Twp. Police Dep't,* 2014 U.S. Dist. LEXIS 11675 (D.N.J. January 30, 2014) *aff'd by* 581 Fed. Appx. 149 (3d Cir. 2014); *See also Milbrand v. Miner*, 2018 U.S. Dist. LEXIS 144546 (M.D. Pa Aug. 24, 2018).

"A 'common sense' approach [must be taken] to the issue of probable cause' and a determination as to its existence must be based on the '***totality of the circumstances***.'" *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (emphasis added); *See also Andrews v. Scuilli*, 853 F.3d 690 (3d Cir. 2017). Far from demanding proof of guilt beyond a reasonable doubt, "[p]robable cause exists if there is a '**fair probability**' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 787 (3rd Cir. 2000) (quoting *Sherwood v Mulvihill*, 113 F.3d 396, 401, (3d. Cir. 1997)(emphasis added). Put another way, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

Finally, it is well established that probable cause may be based on a single and reasonably reliable eyewitness identification. *Green v. City of Philadelphia*, 1998 U.S. Dist. LEXIS 6594 (E.D. Pa. May 8, 1998); *See also Merkle*, 211 F.3d at 790, n. 8 (3d Cir. 2000); *See also Wilson*, 212 F.3d at 790-92. More precisely:

> Where a police officer possesses knowledge of a credible eyewitness ... a reasonable jury could not find that [he] lacked knowledge of sufficient facts to establish probable cause to arrest. A positive identification by a victim may usually be sufficient to establish probable cause. However, this precept is qualified, and **independent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist.** *Vega v. Ripley*, 2013 U.S. Dist. LEXIS

19175, *31-32 (M.D. Pa. May 13, 2013)(internal quotations and
citations omitted)(emphasis added).

Although there is nothing in the case at bar from which to even argue that the
identification of Mr. Arrington was suggestive, even an unduly or unnecessarily suggestive
identification procedure may create a substantial risk of misidentification, but nonetheless not
violate due process so long as the identification possesses sufficient aspects of reliability. *See
Green*, 1998 U.S. Dist. LEXIS 6594 at *12; *See also United States v. Brownlee*, 454 F.3d 131,
139 (3d Cir. 2006)("suggestive and unnecessary identification procedure does not violate due
process so long as the identification possesses sufficient aspects of reliability.") (*citing Manson
v. Brathwaite*, 432 U.S. 98, 106 (1977)). *See also Helm v. Palo*, 2015 U.S. Dist. LEXIS 12375, at
*29 (E.D. Pa. Feb. 3, 2015) ("The qualified immunity of an officer in a case where his request
for warrant allegedly caused an unconstitutional arrest is defined by the same standard of
objective reasonableness used in suppression hearings.") (*citing Malley v. Briggs*, 475 U.S. 335,
344-35 (1986)). Whether a witness identification is sufficiently reliable is analyzed by the
totality of the circumstances. *Brownlee*, 454 F.3d at 139.

In assessing the reliability of an identification procedure, the totality of the circumstances
analysis requires the Court to consider: (1) the witnesses opportunity to view the criminal at the
time of the crime; (2) the witness' degree of attention; (3) the witness' accuracy in the prior
description of the criminal; (4) the witness' level of certainty demonstrated at the confrontation;
and (5) the length of time between the crime and confrontation. *United States v. Atkinson*, 316
Fed. Appx 93, 96 (3d Cir. 2008) *citing Neil v. Biggers*, 409 U.S. 188, 199 (1972).

In this context, some "unreliability or exculpatory evidence" will not "fatally undermine"
probable cause. *Dempsey*, 834 F.3d at 477-78; *See also Green*, 1998 U.S. Dist. LEXIS 6594 at
*20-21 ("The principle that probable cause may be based on a single and reasonably reliable

eyewitness identification even though the identification may be tarnished by discrepancies in the witnesses' description of the perpetrator, is well established.") (*citing Lellemand v. University of Rhode Island,* 9 F.3d 214, 216 (1ˢᵗ Cir. 1993); *See also Morrison v. Schultz,* 270 Fed. Appx. 111 (3d Cir. 2008)(applying above standard).

Based upon the simple facts surrounding this investigation, the review of the Tyquan Young and Vice videos (Exhibits A and B), and the identification of Mr. Arrington from the photograph (Exhibit C) as reviewed in Section D of this brief, above, ample probable cause for Arrington's arrest and prosecution clearly existed. Therefore, each and every one of the claims raised by Plaintiff against Detective Gustafson, Detective Stevens and the City of Erie must be dismissed, with prejudice.

## G.    Stevens' Identification of Plaintiff Did Not Involve State Action

Section 1983 imposes civil liability upon any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunity secured by the constitution or the laws of the United States. *Schuman v. Penn Manor School District,* 422 F.3d 141, 146 (3d Cir. 2005). To establish a claim under Section 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence,* 396 F.3d 313, 319 (3d Cir. 2005). The requirement that a defendant act under color of state law is essential in order to establish a claim under Section 1983. *Adickes v. S. H. Kress and Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598 (1970).

In the case at bar, when Detective Stevens identified Mr. Arrington from the photograph provided to him, he was not acting under color of state law because he did not exercise any power possessed by him as a police officer. "Action under color of law requires that one liable under Section 1983 have exercised power possessed by virtue of state law and made possible

only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Township Police Department,* 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998).

    The United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). The inquiry is fact-specific. *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "State action may be found if, though only if, there is such a 'close nexus between the state and the challenged action' that seemingly private behavior may be fairly treated as that of the state itself.*" Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295, 121 S.Ct. 924 (2001) (citations omitted).

## H. Absolute Witness Immunity

    Because Detective Stevens' only involvement in the case at bar is the identification of Mr. Arrington from a photograph shown to him and, perhaps, later providing testimony at the preliminary hearing and at trial, he is entitled to absolute immunity as a witness.

    In *Briscoe v. LaHue*, 460 U.S. 325, 103 Sup. Ct. 1108 (1983), the Supreme Court held that police officers are entitled to absolute immunity from claims under Section 1983 even if they provide perjured testimony at trial. The Supreme Court concluded that:

> [a] police officer on the witness stand performs the same functions
> as any other witness; he is subject to compulsory process, takes an

oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury.

*Id.* at 342.

Section 1983, the Court explained "did not abrogate the absolute immunity existing at common law." *Id.* at 334. The Court declined to decide whether immunity applies for perjured testimony at pre-trial proceedings, *Id.* at 328(n)(5), however, the Third Circuit Court of Appeals extended this protection to pre-trial proceedings in *Williams v. Hepting*, 844 F.2d 138, 140-41 (3d Cir. 1988, cert. denied, 488 U.S. 851, 109 Sup. Ct. 135 (1988).

In *Williams*, the plaintiff alleged that a witness gave perjured testimony at the preliminary hearing, suppression hearings and trial. The Court of Appeals reviewed the policy arguments supporting common law witness immunity and concluded that they "support the extension of the absolute immunity doctrine to a witness at the pre-trial stage of the judicial process." *Id.* See also *Kulwicki v. Dawson*, 469 F.2d 1454, 1467 n. 16 (3d Cir. 1992); *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992).

Undersigned counsel conducted a diligent search but was unable to find any federal legal authority that extended absolute witness immunity to non-testimonial, out-of-court statements given by a witness such as identifying a criminal defendant from a photograph or video. Nonetheless, we urge the Court to extend absolute witness immunity to Detective Stevens because the considerations weighed by the United States Supreme Court in the *Briscoe* decision apply as equally and forcefully to situations such as Detective Stevens' identification of the Plaintiff from a photograph as they do to testimony provided by a witness in a judicial proceeding.

The Court in *Briscoe* reviewed the history of witness immunity in numerous cases analyzing this doctrine under English common law. In fact, some of the decisions reviewed by

15

the Court in *Briscoe* dated as far back as 1585. The *Briscoe* Court wrote, "In the words of one 19th century Court, in damages suits against witnesses, 'The claims of the individual must yield to the dictates of public policy, which require that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.'" *Briscoe v. LaHue*, 460 U.S. at 332-333; quoting *Calkins v. Sumner*, 13 Wis. 193, 197 (1860). "A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify." *Brisco v. LaHue*, 460 U.S. at 333 citing *Henderson v. Broomhead*, 157 Eng. Rep. 964, 968 (Ex. 1859). Second, "Once a witness is on the stand, his testimony might be distorted by fear of subsequent liability." *Briscoe v. LaHue*, 460 U.S. at 333 citing *Barnes v. McCrate*, 32 ME. 442, 446-447 (1851).

"A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to provide the finder of fact of candid, objective and undistorted evidence. But, the truth-finding process is better served if the witness' testimony is submitted to 'the crucible of the judicial process so that the fact finder may consider it, after cross-examination, together with other evidence in the case to determine where the truth lies.'" *Briscoe v. LaHue*, 460 U.S. at 333-334 (citations omitted).

In the case at bar, the Defendants urge the Court to extend absolute witness immunity to Detective Stevens' non-testimonial, out-of-court identification of the Plaintiff from the photograph presented to him in order to preserve the truth-finding process and to encourage witnesses to come forward and offer information, perhaps information regarding the identification of a perpetrator, without fear of later reprisal or civil liability for the mere act of stepping forward when information is requested from them. Based upon the foregoing, the

Defendants aver that Detective Stevens is entitled to absolute witness immunity for his identification of the Plaintiff and for his subsequent testimony in the criminal prosecution, at whatever stage he testified, of Mr. Arrington.

## I.    Qualified Immunity

Qualified Immunity is an affirmative defense for government officials subject to §1983 actions which operates to shield government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Helm v. Palo*, 2015 U.S. Dist. LEXIS 12375, at *28 (E.D. Pa. Feb. 3, 2015) *citing Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). In other words, an officer is not entitled to qualified immunity if 'at the time of the challenge conduct, the contours of the right were sufficiently clear that every reasonable official would have understood that he was doing violates that right.' *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L. Ed. 2d 1149 (2011). 'We do not require a case directly on point, but existing precedent must have placed a statutory or Constitutional question beyond debate.' *Id.* 'The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.' *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2015) (citation and internal quotation marks omitted).

The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

17

"The Supreme Court has 'repeatedly…stressed the importance of resolving immunity

questions at the earliest stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 231-232

(2009).

> Because qualified immunity is "an immunity from suit rather than
> a mere defense to liability … it is effectively lost if a case is
> erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S.
> 511, 526 (1985) (emphasis deleted). Indeed, we have made clear
> that **the "driving force" behind creation of the qualified
> immunity doctrine was a desire to ensure that "'insubstantial
> claims' against government officials [will] be resolved prior to
> discovery."** *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2
> (1987). **Accordingly, "we repeatedly have stressed the
> importance of resolving immunity questions at the earliest
> possible stage in litigation."** *Hunter v. Bryant*, 502 U.S. 224, 227
> (1991) (per curiam).

*Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (emphasis added).

Qualified immunity provides "government officials breathing room to make reasonable

but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly

violate the law." *Ashcroft v. al-Kidd*, 563 U.S. at 743. Whether a government official is

shielded by qualified immunity requires a reviewing court to look to the objective legal

reasonableness of the officials' actions alleged to have violated the plaintiff's rights. *Vega v.

Ripley*, 2013 U.S. Dist. LEXIS 191975, at *15 (M.D. Pa. May 15, 2013) *citing Orsatti v. N.J.

State Police*, 71 F.3d 480, 483 (3d Cir. 1995); *See also Helm v. Palo*, 2015 U.S. Dist. LEXIS

12375, at *29 (E.D. Pa. Feb. 3, 2015).

> When this probable cause determination rests upon a victim or
> witness identification of the alleged perpetrator from a photo line-
> up, additional considerations come into play. As a general rule,
> police who rely upon a photo line-up identification of a suspect to
> make an arrest are entitled to qualified immunity from damages on
> a false arrest claim. *See, e.g., Phillips v. Allen*, 668 F.3d 912, 916
> (7th Cir. 2012); *Atterbury v. City of Miami Police Dep't*, 332 F.
> App'x 724, 725 (11th Cir. 2009); *Brown v. Abercrombie*, 151 F.
> App'x 892, 893 (11th Cir. 2005); *Jernigan v. Richard*, CV-08-
> 2332-PHX-GMS, 907 F. Supp. 2d 998, 2012 WL 79262 (D. Ariz.

18

Jan. 11, 2012); *Garret v. City of New York*, 10 CIV. 2689 JGK, 2011 U.S. Dist. LEXIS 109465, 2011 WL 4444514 (S.D.N.Y. Sept. 26, 2011); *Roberts v. White*, 698 F. Supp. 2d 457, 459 (D. Del. 2010). These cases all recognize the commonsense principle that police should be empowered to act when a victim or witness identifies a perpetrator, without having concerns regarding potential civil liability arising out of mistaken identification paralyzing their efforts. This principle applies, and police are entitled to qualified immunity for arrests arising out of photo line-up identifications, even if in hindsight the photo array may be subject to some criticism as mildly suggestive. *Phillip v. Allen*, 668 F.3d 912, 916 (7th Cir. 2012). In short, in this setting good faith mistakes arising out photo line-up identifications are cloaked with qualified immunity; that qualified immunity is only vitiated if the evidence reveals that police engaged in some deliberate, intentional, wrongful manipulation of a photo line-up resulting in the arrest of an innocent person. *See Good v. Curtis*, 601 F.3d 393, 395 (5th Cir. 2010).

*Vega*, 2013 U.S. Dist. LEXIS 191975 at *16-17.

In the instant matter, both Detectives Gustafson and Stevens are entitled to qualified immunity because their respective conduct did not violate Mr. Arrington's constitutional rights. Further, neither officer would have had any reason to believe that their respective conduct would or could possibly violate Arrington's rights.

Detective Stevens merely identified Mr. Arrington as the person depicted in the photograph shown to him (Exhibit C). He had no other role or involvement in the decision to arrest or prosecute the Plaintiff. Therefore, even if Stevens was incorrect in his identification of Arrington as the person in the photograph, Detective Stevens is cloaked with qualified immunity and must be dismissed.

Similarly, Detective Gustafson relied upon the identification of Mr. Arrington by three separate individuals as the person depicted in the photograph (Exhibit C). That positive identification coupled with the video evidence shown in Exhibits A and B gave Gustafson an objectively reasonable and good-faith basis to conclude that he had probable cause to arrest and

prosecute Arrington. The determination of probable cause was reinforced by the Magisterial

District Judge who also found that probable cause existed. Further, the criminal charges passed

muster at the Preliminary Hearing stage and through the pretrial process. Based upon the

foregoing, Detective Gustafson is also cloaked with qualified immunity and must be dismissed.

### J.    Plaintiff Fails To Set Forth A Viable *Monell* Claim Because He Fails To Identify A Specific Policy, Practice Or Custom That Was The Moving Force Behind A Violation Of Mr. Arrington's Constitutional Rights

In *Monell v. Department of Social Services,* 436 U.S. 658 (1978), the Supreme Court of

the United States established that municipalities and other local governmental units are included

among those "persons" subject to liability under §1983. *Id. at 690.* It is firmly established that

for purposes of §1983, municipalities and other local governmental entities or officials may not

be held liable under federal civil rights law for the acts of their employees under a theory of

*respondeat superior* or vicarious liability. *Iqbal,* 566 U.S. 622 (2009); *See also Colburn v.*

*Upper Darby Twp.,* 946 F.2d 1017, 1027 (3d Cir. 1991). However, municipalities and other

local governmental entities or officials may be held liable "when execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly

said to represent official policy, inflicts the injury that the government as an entity is responsible

under §1983." *Monell,* 436 U.S. at 694.

To sustain a *Monell* municipal liability claim, a plaintiff must first "identify a municipal

'policy' or 'custom' that caused the plaintiff's injury." *Bd. of County Comm'rs of Bryan County*

*v. Brown,* 520 U.S. 397, 403 (1997); *See also McTernan v. City of York, Pa.,* 564 F.3d 636, 658

(3d Cir. 2009). Second, a Plaintiff must allege a "direct causal link between a [local

government] policy or custom and the alleged constitutional deprivation." *Jiminez v. All*

*American Rathskeller, Inc.,* 503 F.3d 247, 249 (3d Cir. 2007)(quoting *City of Canton v. Harris,*

489 U.S. 378, 385 (1989). Otherwise stated, the "policy or custom" of the Defendants must be

the "moving force" behind the constitutional violation. *Berg v. County of Allegheny,* 219 F.3d

261 (3d Cir. 2000). Where "the policy or custom does not facially violate federal law, causation

can be established only by demonstrating that the municipal action was taken with deliberate

indifference as to its known or obvious consequences. A showing of simple or even heightened

negligence will not suffice." *Id. at 276* (citing *Brown,* 520 U.S. at 407); *See also Warren v.*

*Prime Care Medical Inc.,* 2017 WL 11508186, *8 (E.D. Pa. 2017) ("When a policy itself is not

unconstitutional, 'rigorous standards of culpability and causation must be applied.'")(citing

*Brown,* 520 U.S. at 405).

Because Mr. Arrington has failed to identify any specific policy, practice or custom of the

City of Erie that violated his constitutional rights, his *Monell* claims must be dismissed.

### K.    Plaintiff's *Monell* Theories Asserting Failure To Train, Supervise, Or Discipline Are Legally Or Factually Deficient

Plaintiff alleges that the City of Erie failed to properly train, supervise, or discipline its

police officers essentially concerning the correct way to investigate a crime, the proper

evaluation of evidence and the proper assessment of probable cause. *[ECF 3, ¶53]*

It is firmly established, notwithstanding the absence of a formal policy, that a widespread

failure by policy makers to provide adequate training or supervision to subordinates may give

rise to municipal liability. *Schlaybach v. Berks Heim Nursing & Rehabilitation,* 434 F. Supp. 3d

342, 351 (E.D. Pa. 2020)(citing *Brown,* 520 U.S. at 407); *See also Warren, supra.* The Supreme

Court of the United States has stated that a municipal liability claim for failure to supervise or

train survives only in very compelling circumstances:

> In limited circumstances, a local government's decision not to train
> certain employees about their legal duty to avoid violating citizens'
> rights may rise to the level of an official government policy for

> purposes of §1983. *A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.* *See Oklahoma City v. Tuttle,* 471 U.S. 808, 822-823 (1985)("[A] policy of inadequate training is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*).

*Connick v. Thompson,* 563 U.S. 51, 61 (2011)(**emphasis added**).

In order to sustain a *Monell* claim based upon a failure to train or supervise, a Plaintiff

must first identify a municipal policymaker. *McTernan v. City of York,* 564 F.3d 636, 659 (3d

Cir. 2009). Next, a Plaintiff must show "that in light of the duties assigned to [the relevant

employees,] the need for more or different training is so obvious, and the inadequacy so likely to

result in the violation of constitutional rights, that policymakers of the [municipality] can

reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris,*

489 U.S. 378, 390 (1989); *See also Thomas v. Cumberland Cty.,* 749 F.3d 217, 222 (3d Cir.

2014).

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Brown,* 520 U.S. at 410. *A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.* *Connick,* 563 U.S. 62 (quoting *Brown,* 520 U.S. at 409). *Such a pattern of behavior is necessary to put municipal policymakers on notice that a new program is required; through continued adherence to a policy they know or should know violates the rights of others, they demonstrate deliberate indifference.* *Thomas,* 749 F.3d 223. As the Supreme Court observed, a lesser standard of fault for failure-to-train claims brought pursuant to Section 1983 would result in *de facto respondeat superior* liability on municipalities – a result the Court explicitly rejected in *Monell.*

*Schlaybach,* 434 F.Supp. 3d at 351-52 (internal quotations omitted)(**emphasis added**).

Pursuant to the holdings in *Iqbal* and *Twombly,* it is not sufficient to allege generalized,

boilerplate, conclusory phrases in support of *Monell* liability. Rather, Plaintiff is required to set

forth specific facts to sufficiently put the City of Erie on notice of the factual basis of the alleged failure to train, supervise or discipline. Accordingly, this claim must be dismissed.

## L. Plaintiff's Claims Of Conspiracy Are Woefully Inadequate And Must Be Dismissed

In order to state a claim of civil conspiracy, a plaintiff must present "'enough factual matter to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010)(quoting *Twombly*, 550 U.S. at 556)). Additionally, a plaintiff "must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Id.* at 179; *See also Starzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Conclusory allegations are not entitled to the presumption of truth that ordinarily is applied during a court's Rule 12(b)(6) review of a complaint.

In this case, Plaintiff has failed to plead facts from which an inference of a conspiracy may be drawn. Plaintiff's Complaint lacks any factual allegations as to the time, place, or specific object(s) of the alleged conspiracy. Such facts are needed for a claim of conspiracy to survive a motion to dismiss. *See Ulrich v. Corbett*, 614 Fed. Appx. 572, 574-75 (3d Cir. 2015). Instead, Plaintiff makes a single conclusory allegation of collusion (ECF No. 83, ¶130), which is not entitled to any presumption of truth, and therefore he has failed to state a claim for civil conspiracy.

## M. Amendment to Plaintiff's Complaint Would Be Futile

The United States Court of Appeals for the Third Circuit has instructed that a District Court must permit a curative amendment to a Complaint which is vulnerable to dismissal under Federal Rule of Civil Procedure 12(b)(6) "unless an amendment would be inequitable or futile."

*Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).  An amendment is deemed to

be futile if the Amended Complaint cannot withstand a renewed Motion to Dismiss.  *Shane v.*

*Fauver,* 213 F.3d 113, 116 (3d Cir. 2000).  In the instant matter, further amendment to Plaintiff's

complaint would be futile and therefore not permitted.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

By _____
   Patrick M. Carey, Esquire
   717 State Street, Suite 701
   Erie, PA  16501
   (814) 480-7800

*LEGAL/148323541.v1*

IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TODRICK W. ARRINGTON, JR.,

    Plaintiff

    v.

CITY OF ERIE POLICE
DEPARTMENT, MATTHEW J.
GUSTAFSON, JERRY STEVENS, ERIE
COUNTY PROBATION OFFICE,
ALEX KISSELL, ASHLEY CLARK,
ERIE COUNTY DISTRICT
ATTORNEY'S OFFICE, EMILY
DOWNING, KHADJA HORTON, ERIE
COUNTY PRISON, JOHN DOES (ERIE
COUNTY PRISON GUARDS),

    Defendants

NO.  1:22-cv-00226

JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in

Support of Motion to Dismiss has been served upon the following known counsel of record this

_13th_ day of September, 2022, via electronic mail and/or United States First-Class Mail,

postage prepaid:

Peter A. Pentz, Esquire
Pentz Law
2409 State Street
Suite A
Erie, PA  16503
*Attorney for Plaintiff*

G. Michael Garcia II, Esquire
MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN
717 State Street, Suite 701
Erie, PA  16501
*Attorney for Erie County Defendants*

Patrick M. Carey, Esquire