IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TODRICK W. ARRINGTON, JR.,

        Plaintiff

        v.

CITY OF ERIE; MATTHEW J.
GUSTAFSON; JERRY STEVENS; ERIE
COUNTY; ALEX KISSELL; ASHLEY
CLARK; EMILY DOWNING;
KHADIJA HORTON; JOHN DOES
(ERIE COUNTY PRISON
PERSONNEL); VICTORIA HERMANN,

        Defendants

NO.  1:22-CV-226

JURY TRIAL DEMANDED

**ERIE COUNTY DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6), OR
ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO
RULE 12(E)**

        AND NOW, come the Defendants, Alex Kissell, Ashley Clark, Emily Downing, Khadija

Horton, and Erie County (hereinafter "Erie County Defendants"), by and through their attorneys,

Marshall Dennehey Warner Coleman and Goggin, and G. Michael Garcia II, Esquire, and file the

within Brief in Support of their Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6), or Alternative Motion for Definite Statement pursuant to 12(e), as

follows:

## I.    INTRODUCTION

        This action arises out of citizen protests and subsequent riots on May 30, 2020, in

downtown Erie, Pennsylvania, which were part and parcel of broader nationwide Black Lives

Matter protests and riots in the wake of the death of George Floyd in Minneapolis, Minnesota.

After the peaceful protests concluded in downtown Erie on May 30, 2020, civil unrest and

rioting broke out resulting in wide-scale vandalism of property in downtown Erie, to include but not limited to, damage to three double parking meters located on the 600 block of State Street.

On June 2, 2020, City of Erie Police Detective Matthew Gustafson charged the Plaintiff, Todrick Arrington, for the acts of vandalism involving the parking meters, based upon his collection and review of video surveillance footage and with the aid positive identifications by his colleague, Officer Jerry Stevens and Erie County Probation Officers Alex Kissell and Ashley Clark. Plaintiff was arrested and committed to the Erie County Prison on July 4, 2020, where remained through his jury trial, which resulted in his acquittal. Throughout his incarceration, prosecution, and in this instant lawsuit, Plaintiff insists he was not the individual who committed the acts of vandalism based upon the existence of tattoo on hand, which may or may not have been visible on surveillance footage, and the fact that he secured an alibi witness to testify on his behalf.

In essence, Plaintiff's instant civil rights lawsuit fundamentally flawed insofar as it rests principally upon his erroneous assertion that the exculpatory evidence he proffered in the course of his criminal prosecution was incontrovertible. Flowing from this specious belief, Plaintiff further conflates the jury's acquittal with defacto constitutional violations of his Fourth and Fourteenth Amendment Rights. Quite the contrary, a mistaken arrest and prosecution still complies with the Fourth and/or Fourteenth Amendment if it is reasonable.

Here, Plaintiff has failed to establish that Erie County Adult Probation Officers Kissell and Clark violated a clearly established constitutional right premised solely upon their responses to Det. Gustafson's inquiry concerning the identity of the individual depicted in a photograph. Even if he had sufficiently set forth a cognizable claim, Plaintiff himself admits that he had contact with the Erie County Adult Probation Department a week prior to the underlying

2

incident. Accordingly, even if their identification was mistaken or incorrect, it nonetheless was not unreasonable under the circumstances.

Plaintiff's claims against Assistant District Attorneys ("ADA") Emily Downing and Khadija Horton are even more tenuous. Here, Plaintiff's conclusory assertions concerning the incontrovertible nature of his exculpatory evidence is not entitled to assumption of truth nor are his egregiously unsubstantiated claims concerning alleged fabrication of evidence. When you strip away these unsubstantiated inferences, it is abundantly clear that ADAs Downing and Horton acted at all times well within the bounds of their prosecutorial capacity. Finally, and similar to Plaintiff's underlying factual allegations against ADAs Downing and Horton, Plaintiff has asserted patently insufficient claims against Erie County. For the reasons set forth below, Plaintiff's Amended Complaint must be dismissed, with prejudice against the moving Defendants.

## II.    ARGUMENT

### A.    Rule 12 Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d. Cir. 1993). When ruling on a defendant's motion to dismiss, a judge must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526-27 (3d. Cir. 2018). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to establish plausible allegations. *Id.*, at 644 (citing *Twombly*, 550 U.S. at 555). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.*, at 662, 678 (citing *Twombly*, 550 U.S. at 544, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, (citing *Twombly*, 550 U.S. at 556).

Following Twombly/Iqbal, a District Court should the following three-step approach when ruling on a defendant's motion to dismiss:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d. Cir. 2010)).

This determination is a "context-specific task that requires the reviewing court to draw on its own judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, it is well settled that: "[t]he Federal Rules of Civil Procedure require that a Complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Federal Civil Procedure 8(a)(2), and that each averment be 'concise, and direct,' Federal Civil Procedure 8(e)(1)." *Scibelli v. Lebanon County*, 219 F.Appx. 221, 222 (3rd Cir. 2007). Thus, when a Complaint is illegible or incomprehensible or when a Complaint is also largely unintelligible, an order dismissing a Complaint under Rule 8 is clearly appropriate. See *Mincy v. Klem*, 303 F.Appx. 106 (3rd Cir. 2008); *Stephanatos v. Cohen*, 236 F. Appx. 785, 787 (3rd Cir.

4

2007). Of course, a district court may alternatively exercise its broad discretion to order a

plaintiff to file a more definite statement pursuant to Fed.R.Civ.P. 12(e) when the plaintiff's

complaint is so vague or ambiguous that the moving party cannot reasonably be required to

frame a responsive pleading. *Colon v. Aknglikowski,* 2020 WL 5107551 (W.D. Pa. Aug. 31,

2020).

### B.     §1983 Actions

Section 1983 states, in pertinent part:

> Every person, who, under color of state statute, ordinance,
> regulation, custom, or usage of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or any other person within the
> jurisdiction thereof of deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. §1983.

Section 1983 is not a source of substantive rights but provides a vehicle by which violations of

federal law committed by state actors can be vindicated. *Kneipp v. Tedder*, 95 F.3d 1199, 1204

(3d Cir. 1996). Thus, a plaintiff asserting a civil rights violation under §1983 must establish (1)

the deprivation of a right secured by the United States Constitution or federal law; and (2) that

the alleged violation was committed by a person acting under color of state law. *Kneipp*, 95 F.3d

at 1204 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). It is

axiomatic that constitutional tort liability is personal in nature and can only follow personal

involvement in the alleged wrongful conduct. *Saisi v. Murray,* 822 F. Appx. 47, 48 (3d Cir.

2020); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Otherwise stated, liability

may not predicated on the operation of respondeat superior, and such allegations must be made

with appropriate particularity. *Id.*

5

### C.    Official Capacity Claims

Plaintiff has asserted claims against Alex Kissell, Ashley Clark, Emily Downing, and Khadija Horton in their official capacities as Erie County Adult Probation officers and Erie County assistant district attorneys, respectively. *ECF No. 3,* at ¶¶s 6,7, 9, 10, 63, 72, 73. It is firmly established that "[a]n official capacity suit against a municipal officer is simply another way of pleading the same action against the municipality itself." *Plonka v. Borough of Susquehanna,* 2017 WL 1036478, at *4 (M.D. Pa. Mar. 17, 2017)(citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)); See also *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989)("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office…As such, it is no different from a suit against the State itself.") Thus, where the government entity for which the individual defendants work is a named defendant, claims against the individual defendants in their official capacities may be dismissed as being redundant. *Burton v. City of Philadelphia,* 121 F. Supp. 2d 810, 812 (E.D. Pa. Oct. 25, 2000).

Here, Plaintiff has asserted a *Monell* claim against Erie County alleging violations of his constitutional rights resulting from unnamed "policies, practices, customs, and usages" of both the Erie County Adult Probation Department and Erie County District Attorney's Office. *ECF No. 3,* at ¶¶s 66, 76. Alternatively, the basis for Plaintiff *Monell* claim asserts that Erie County Adult Probation Department and Erie County District Attorney's Office failed to train, supervise, and discipline its subordinate employees. *Id.* at ¶¶s 67-69, 77-79. The allegations leveled against Officer Kissell, Officer Clark, ADA Downing and ADA Horton, in their official capacity, are thus redundant of the *Monell* claim raised against the Erie County; therefore, to the extent they sued in their official capacities, those claims should be dismissed.

6

### D.   Failure to state a claim against Alex Kissell and Ashley Clark

At Count IV of the Amended Complaint, Plaintiff asserts a "§1983 claim" for violations of his Fourth and Fourteenth Amendment rights against Officers Kissell and Clark. *ECF No. 3, at ¶¶s 61-64.* Accordingly, Plaintiff must establish: (1) the deprivation of a right secured by the United States Constitution or federal law; and (2) that the alleged violation was committed by a person acting under color of state law. *Kneipp*, 95 F.3d at 1204 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)); *See also Saisi v. Murray*, 822 F. Appx. at 48. Unlike his specific assertion of claims for false arrest and malicious prosecution against the co-defendant police officers and assistant district attorneys, Count IV of Plaintiff's Amended is solely based on assertions that Officers Kissell and Clark "provid[ed] [false], illegal and improper witness against Plaintiff" and/or for "fail[ed] to correct the misidentification." *ECF No. 3,* at ¶¶s 62-63. With respect to Plaintiff's theory that Officers Kissell and Clark deliberately misidentified Plaintiff *resulting* in his *arrest* and *incarceration,* the only conceivable constitutional claims this theory implicates are those for false arrest and/or malicious prosecution. *See e.g. Martinez v. Fruend,* 2015 WL 1608429 (E.D. Pa. Apr. 10, 2015). Otherwise stated, an *arrest* and *incarceration* without probable cause. *Id.* It is abundantly clear from Plaintiff's Amended Complaint that neither Officer Kissell nor Clark were responsible for *initiating criminal proceedings* against Plaintiff or *arresting* Plaintiff, otherwise essential "acts" necessary for establishing either a Fourth and/or Fourteenth Amendment claim for false arrest and/or malicious prosecution. *See e.g. James v. City of Wilkes-Barre,* 700 F.3d 675, 680 (3d Cir. 2012)(discussing claim for false arrest); *Johnson v. Knorr,* 477 F.3d 75, 81-82 (3d Cir. 2007)(discussing malicious prosecution).

Plaintiff's alternative theory is based upon his assertion that Officers Kissell and Clark lacked due diligence in their identification Plaintiff and/or were not diligent in correcting the misidentification. *ECF No. 3*, at ¶¶s 62-63. Plaintiff's well-pleaded facts implicating Officers Kissell and Clark confirm this. Here, Plaintiff contends, quite contradictorily, that despite having been revoked and re-sentenced to a term of probation in Erie County the week prior to May 30, 2020, neither Officer Kissell nor Officer Clark had personal "knowledge of Plaintiff's appearance" nor were they "familiar enough with Plaintiff to identify him as the person pictured in the still photograph." *Id.* at ¶¶s 13, 28, 31. In this regard, "failure to do due diligence is not a deprivation of a recognized right secured by the United States Constitution or other federal laws." *Karloski v. City of Aliquippa,* 2016 WL 7404551, *5 (W.D. Pa. Dec. 22, 2016)(citing *Baker v. McCollan,* 443 U.S. 137, 146-47 (1979). For these reasons, Plaintiff has failed to state a cognizable claim for violations of his Fourth and Fourteenth Amendment rights against Officers Kissell and Clark; therefore, Count IV must be dismissed, with prejudice.

**E.      Officers Kissell and Clark are otherwise entitled to qualified immunity**

Qualified Immunity is an affirmative defense for government officials subject to §1983 actions which operates to shield government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kunkle v. Naugle,* 660 Fed. Appx. 132, 135 (3d Cir. 2016)(citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). In other words, a government official is not entitled to qualified immunity if 'at the time of the challenged conduct, the contours of the right were sufficiently clear that every reasonable official would have understood that what he was doing violates that right.' *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L. Ed. 2d 1149 (2011). We do not require a case directly on point, but existing

8

precedent must have placed a statutory or Constitutional question beyond debate.' *Id.* 'The
dispositive question is whether the violative nature of particular conduct is clearly established.
This inquiry must be undertaken in light of the specific context of the case, not as a broad
general proposition." *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2015) (citation and internal
quotation marks omitted).

The protection of qualified immunity applies regardless of whether the government
official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of
law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citing *Butz
v. Economou*, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes
in judgment, whether the mistake is one of fact or one of law").

"The Supreme Court has 'repeatedly…stressed the importance of resolving immunity
questions at the earliest stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 231-232
(2009).

> Because qualified immunity is "an immunity from suit rather than a
> mere defense to liability … it is effectively lost if a case is
> erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S.
> 511, 526 (1985) (emphasis deleted). Indeed, we have made clear
> that the "driving force" behind creation of the qualified immunity
> doctrine was a desire to ensure that "'insubstantial claims' against
> government officials [will] be resolved prior to discovery."
> *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987).
> Accordingly, "we repeatedly have stressed the importance of
> resolving immunity questions at the earliest possible stage in
> litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per
> curiam).

*Pearson*, 129 S.Ct. 808, 815 (2009).

Qualified immunity provides "government officials breathing room to make reasonable
but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly
violate the law." *Ashcroft*, 563 U.S. at 743. Whether a government official is shielded by

9

qualified immunity requires a reviewing court to look to the objective legal reasonableness of the official's actions alleged to have violated the plaintiff's rights. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

Incorporating the analysis set forth in the preceding section, Plaintiff has failed to adequately demonstrate that Officers Kissell and Clark were personally involved and/or otherwise acted to deprive Plaintiff of a "clearly established" constitutional right. Even assuming that Plaintiff had alleged a plausible violation of a "clearly established" constitutional right, their conduct as detailed in the Amended Complaint was objectively reasonable under the circumstances. The concept of absolute witness immunity buttresses this conclusion. It is well established that state actors, to include probation officers, are entitled to absolute immunity from claims under §1983 even if they provide perjured testimony during pretrial proceedings, trial, and written reports to the court. *Briscoe v. LaHue*, 460 U.S. 325, 103 Sup. Ct. 1108 (1983)[1]; *Williams v. Hepting*, 844 F.2d 138, 142-43 (3d Cir. 1988)[2](citing *Tripati v. INS*, 784 F.2d 345, 348 (10th Cir. 1986)(immunity extended to probation officers who alleged include false statement in pretrial bond report and presentence reports). Here, Plaintiff's Amended Complaint admits that a mere week prior to the incident of May 30, 2020, Plaintiff had contact with the Erie County Adult Probation Department. *ECF No. 3*, at ¶13.[3] As such, Officers Kissell and Clark's

---

[1] "A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to provide the finder of fact of candid, objective and undistorted evidence. But, the truth-finding process is better served if the witness' testimony is submitted to 'the crucible of the judicial process so that the fact finder may consider it, after cross-examination, together with other evidence in the case to determine where the truth lies.'" *Id.*, 460 U.S. at 333-334 (citations omitted).

[2] "The function of witnesses is fundamental to the administration of justice. The court's judgment is based on their testimony and they are given every encouragement to make a full disclosure of all pertinent information within their knowledge… '[E]very consideration of public policy requires that they should be as fearless in testimony as the judge and jury are independent in weighing their testimony.'" *Id.* 844 F.2d 138, 141(quoting *Brawer v. Horowitz*, 535 F.2d 830, 837 (3d Cir. 1976)).

[3] This Honorable Court may take judicial notice of public court records/dockets, which are available on the The Unified Judicial System of Pennsylvania Web Portal. Furthermore, this Honorable Court may take judicial notice

10

response to Det. Gustafson's sole inquiry concerning whether the individual depicted in the

photo was the same individual who had registered with their office mere days before the

underlying incident, even if mistaken, is insufficient to overcome their entitlement to qualified

immunity under the circumstances. *See e.g. United States v. Doss,* 2014 WL 4185336, *3 (M.D.

Pa. Aug. 21, 2014)(citing *United States v. Belle,* 593 F.2d 478, 497 n 15 (3d Cir.

1979)(knowledge of one law enforcement officer may be imputed to another officer).

Accordingly, Alex Kissell and Ashley Clark are entitled to qualified immunity under the

circumstances of this case and Plaintiff's claims against them must be dismissed, with prejudice.

### F.    Emily Downing and Khadija Horton are entitled to prosecutorial immunity

It is firmly established that prosecutors are "immune from damages claims arising from

their official acts." *Naranjo v. City of Phila.*, 626 F. App'x. 353, 357 (3d Cir. 2015)(citing

*Imbler v. Pachtman,* 424 U.S. 409, 430 – 431 (1976)). This immunity "extends to acts that are

intimately associated with the judicial phase of the criminal process" so as to allow a prosecutor

to work without being constrained by the "consequences in terms of his [or her] potential

liability in a suit for damages." *Yarris v. Cnty. of Del.,* 465 F.3d 129, 135 (3d Cir. 2006) (citing

*Imbler*, 424 U.S. 430 – 431). In *Yarris,* the Third Circuit Court of Appeals set forth as follows:

> It is well settled that prosecutors are entitled to absolute immunity
> from claims based on their failure to disclose exculpatory
> evidence, so long as they did so while functioning in their
> prosecutorial capacity. As the Supreme Court explained in *Imbler,*
> the "deliberate withholding of 'exculpatory information' is
> included within the 'legitimate exercise of prosecutorial
> discretion." 424 U.S. at 431-32 n. 34, 96 S.Ct. 984; *See also Smith
> v. Holtz,* 210 F.3d 186, 199 n. 18 (3d Cir. 2000). Furthermore,
> courts have held that prosecutors are entitled to immunity even
> when they withhold evidence after trial while the criminal
> conviction is on appeal. *See e.g. Parkinson v. Cozzolino,* 238 F.3d

---

that Plaintiff's revocation and re-sentencing occurred subsequent to Mr. Arrington's entry of a guilty plea and
sentence to Simple Assault on May 7, 2020, at Crawford County Docket CP-20-CR-839-2019.

>              145, 152 (3d. Cir. 2001)(explaining that "absolute immunity
>              covers prosecutors' actions after the date of conviction while a
>              direct appeal is pending").

465 F.3d at 137.

Here, separating Plaintiff's well-pleaded facts from those that are merely bald and

conclusory allegations, it is abundantly apparent that Plaintiff has failed to establish that ADAs

Downing and/or Horton committed any acts that went beyond those intimately associated with

the judicial phase of Plaintiff's criminal case. First and foremost, the Amended Complaint

clearly and unequivocally establishes that ADAs Downing and Horton did not participate

whatsoever in Det. Gustafson's investigation concerning the vandalized parking meter nor did

they weigh in on his decision to proceed with charges. *ECF No. 3,* at ¶¶s 20-32. Second,

Plaintiff's allegations that ADAs Downing and/or Horton "leaked" information to the news

media or "fabricated" evidence are patently bald and conclusory assertions, which are not

entitled to the assumption of truth. Concerning "leaks" to news media, this Court, in the

absence of Plaintiff providing any proof to the contrary, may take judicial notice[4] that the single

article discussing Mr. Arrington's potential involvement in the riots of May 30, 2020, was

attributed to the City of Erie Police Department, not the Erie County District Attorney's Office

or ADAs Downing and/or Horton. Furthermore, Plaintiff has utterly failed to describe with any

specificity or particularity the nature of the "fabricated" evidence at question in this case.

In sum, Plaintiff's malicious prosecution claims against ADAs Downing and Horton are

entirely based upon his erroneous belief that the mere availability of an alibi witness or other

evidence which could be subject to a variety of interpretations, mandated dismissal of the

charges. *See e.g. Porter v. Gray,* 2007 WL 464694, at \*17 (W.D. Pa. Feb. 13, 2007)(law

---

[4] June 4, 2020, Erie Times News Article "More charged in Erie Riots as Police pledge review"

12

enforcement need not accept an alibi at face value where bias of the alibi witness is self-evident). In this regard, Plaintiff's claims are solely based acts which are part and parcel of the core prosecutorial function, that being the exercise of discretion and judgment concerning the veracity and weight of evidence in preparation for trial. Accordingly, ADAs Downing and Horton are entitled to prosecutorial immunity, and the claims against them should be dismissed with prejudice. *See e.g. Kamienski v. Ford,* 2019 WL 4556917, *5 (D.N.J. Sept. 17, 2019); *Baynard v. Mona,* 2021 WL 4473154, *3-4 (D.N.J. Sept. 30, 2021).

## G.    Plaintiff has failed to state a *Monell* claim against Erie County

"[A] municipal government may be liable under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury' alleged by the plaintiff." *Jefferson v. Lias,* 21 F.4th 74, 78 (3d Cir. 2021) (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978)). However, municipal liability will not lie if advanced "under a *respondeat superior* theory" of liability. *Johnson v. City of Philadelphia,* 975 F.3d 394, 403 (3d Cir. 2020) (citation omitted). Instead, the plaintiff must show the official action was the direct cause of the constitutional violation. *Id.* (citing *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014)). Thus, a plaintiff seeking recovery under a *Monell* theory of liability must show the constitutional violation was proximately caused by either: (1) an official policy; (2) an official custom; (3) a failure to train as evidenced by a pattern of similar constitutional violations; or (4) a failure to train as evidenced by a "single-incident" involving circumstances where the need for training is so obvious official policy makers can said to have acted with deliberate indifference to the claimant's constitutional rights. *See Est. of Roman v. City of*

*Newark*, 914 F.3d 789 (3d Cir. 2019); *Thomas*, 749 F.3d, at 223 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Municipal policy is distinct from municipal custom. "Policy is made when a decisionmaker possessing final authority to establish municipal policy . . . issues an official proclamation, policy, or edict." *Est. of Roman*, 914 F.3d, at 798 (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). As an example, policies may be effected through implementation of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S., at 690. Alternatively, a municipal custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman*, 914 F.3d, at 798 (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). Regardless of its form or title, the substance of the official custom must "be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S., at 691 (footnote omitted).

As a third theory of municipal liability, a *Monell* claim may be predicated upon a public entity's alleged failure to train, supervise, or discipline. *See Est. of Roman*, 914 F.3d, at 798 (citing *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). There, "a plaintiff need not allege an unconstitutional policy[;]" rather, the failure to train must be supported by evidence which "reflects a deliberate or conscious choice." *Id.* (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). The alleged failure to train can only serve as a basis for Section 1983 liability where it "amounts to deliberate indifference to the rights of persons with whom the [municipality] come[s] into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference must be supported by evidence showing: (1) "municipal policy

makers know that employees will confront a particular situation[;]" (2) "the situation involves a difficult choice or a history of employees mishandling[;]" and (3) "the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)). Notice is essential. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011). "Without notice that a course of training is deficient, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

As an alternative to identifying a pattern of similar constitutional violations, a failure to train claim may also be pursued under a "single-incident" theory of municipal liability when, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can be reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S., at 390 (footnote omitted).

"[I]n a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). Yet, the touchstone of the analysis centers upon the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights[.]" *Id.* However, the "single-incident" theory of liability applies only "in certain situations[.]" *Thomas*, 749 F.3d, at 223 (citing *City of Canton*, 489 U.S., at 390 n.10); *see also Connick*, 563 U.S., at, 64 (the *Canton* "Court sought not to foreclose the possibility, *however rare*, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of

15

violations." (emphasis added)); *Brown*, 520 U.S., at 409 (the *Canton* Court "simply hypothesized that, in *a narrow range of circumstances*, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." (emphasis added)).

In the Third Circuit, the "single-incident" theory has been applied only in cases involving: (1) the erroneous issuance of a warrant resulting in wrongful arrest, *Berg v. Cnty. of Allegheny*, 219 F.3d 261 (3d Cir. 2000); (2) the failure to establish a policy which addresses the medication needs of inmates during the first 72 hours of their incarceration, *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003); (3) the failure to provide conflict de-escalation training in juvenile facilities, *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004); and (4) pre-service training in conflict de-escalation and intervention in a correctional facility, *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014). In all other cases, the question is whether the constitutional violation is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations[,]" *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997), with a particular emphasis on the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights[.]" *Id.*

Finally, under any theory of municipal liability, a plaintiff must plead and prove "the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman*, 914 F.3d, at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)); *see also Thomas*, 749 F.3d, at 226 ("Causation is a requirement for failure-to-train liability[.]"). The proximate cause burden requires production of evidence sufficient to "demonstrat[e] an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Id.* (citing *Bielevicz*, 915

F.2d, at 850). An affirmative link is established where the municipality possessed "knowledge of 'similar unlawful conduct in the past, ... failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal alterations omitted).

In the instant matter, Plaintiff has asserted three independent *Monell* claims against Erie County in relation to the Erie County Adult Probation Department, the Erie County District Attorney's Office, and the Erie County Prison. *ECF No. 3,* at ¶¶s 66-69, 76-77, 92-93. Plaintiff's *Monell* claims invokes theories of "practice or custom" liability and "failure to train and/or supervise." *Id.* First, with respect to Plaintiff's *Monell* claims relating the Erie County Adult Probation Department (Count V) and the Erie County District Attorney's Office (Count VII), Plaintiff has failed to state a claim or cause of action establishing violations of a clearly established constitutional right; therefore, these *Monell* claims necessarily fail. *See e.g. Williams v. Borough of West Chester,* 891 F.2d 458, 467 (3d Cir. 1989)("[A municipality] cannot be vicariously liable under *Monell* unless one of [the municipality]'s employees is primarily liable under section 1983 itself.").

Alternatively, in the event that this Honorable Court determines that Plaintiff has stated plausible claims for violations of clearly established rights, Plaintiff's *Monell* claims are woefully inadequate under holdings of *Iqbal* and *Twombly. See e.g. Wood v. Williams,* 568 Fed. App'x 100, 104 (3d. Cir. 2014)(Upholding the District Court's finding that paraphrasing the elements of *Monell* liability are insufficient to satisfy the pleading requirements for a *Monell* claim). With respect to Plaintiff's theories of "policy and practice" liability, the Amended Complaint does not identify any policy, custom, or practice of Erie County or *its policy makers* that caused Plaintiff's alleged harm; rather, it is quintessentially a "threadbare recital of the elements" of a *Monell* claim. *ECF No. 3,* at ¶¶s 66, 76, 92.

17

Plaintiff's theories of "failure to train and/or supervise" are similarly flawed. Here, Plaintiff has not alleged facts from which it can be reasonably inferred that Erie County's alleged failure to train its probation officers, assistant district attorneys, or corrections officers reflects a deliberate or conscious choice. It is apparent from the Amended Complaint that his *Monell* claims rest upon conclusory assertions such as the "failure of Erie County to train was obviously a deficiency and that deficiency was so likely to result in constitutional violates that it constitutes deliberate indifference." *ECF No. 3,* at ¶¶s 67, 77, 93. Similarly, the Amended Complaint baldly and conclusory asserts that Erie County "is aware of the persistent and substantial risk[s]" for violations of clearly established constitutional rights based upon "recurrent circumstances," yet fails articulate with any specificity prior and/or similar occasions of like constitutional violations for purposes of notice. *Connick* 563 U.S. at 62 ("Without notice that a course of training is deficient, decisionmakers can hardly be said to have deliberately chose a training program that will cause violations of constitutional rights."). Lastly, Plaintiff's "failure to train and/or supervise" theories are deficient for his failure to identify Erie County policy makers and facts establishing that they knew their employees would confront situations such as the one at issue in this matter. For these reasons, Plaintiff's *Monell* claims must be dismissed.

### H.   Plaintiff's Conspiracy claim is insufficiently specific

In order to state a claim of civil conspiracy under §1983, a plaintiff must allege that (1) two or more persons conspired to deprive him of a constitutional right; (2) that one or more of the conspirators performed an overt act in furtherance of the conspiracy; (3) the overt act injured Plaintiff by depriving him of his constitutional right; and (4) the conspirators were acting under color of state law." *Barnes Found v. Twp. of Lower Merion.* 242 F.3d 151, 162 (3d Cir. 2001)(quoting 42 U.S.C. §1983); *See also Jutrowski v. Twp. Of Riverdale,* 904 F.3d 280, 293-94

(3d Cir.2018). (quoting *Adickes v*). "To constitute a conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Philadelphia,* 533 F.3d 183, 205 (3d Cir. 2008)(quoting *Adickes. S.H. Kress & Co.,* 398 U.S. 133, 158 (1970)).

It is well settled in the Third Circuit that "[t]o withstand a motion to dismiss, a complaint alleging civil rights conspiracy should identify with particularity the conduct violating plaintiff's rights, the time and place of these actions, and the people responsible therefor." *DeJohn v. Temple University,* 2006 WL 2623274, at *5 (E.D. Pa. Sept. 11, 2006). Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy. *Spencer v. Steinman,* 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id.* Finally, a plaintiff "must provide more than mere incantation of the words conspiracy or acted in concert to satisfy [the] Rule 8 pleading requirement." *Tarapchak v. Lackawanna Cty.,* 173 F. Supp. 3d 57, 73 (M.D. Pa. 2016).

In this case, and for the reasons set forth in preceding sections, as well as the Co-Defendants' Motion to Dismiss (ECF No. 7), Plaintiff cannot establish a violation of constitutional rights; therefore, there can be no conspiracy. *White v. Brown,* 408 F. App'x 585, 599 (3d Cir. 2010). In the event Plaintiff has set forth plausible claims for violations of his constitutional rights, his conspiracy claim is insufficiently particular with respect to the time, place, and people responsible for the actions, which he contends "manifested" the conspiracy. *DeJohn,* supra; *Tarapchak,* supra. Furthermore, many of the underlying "acts" Plaintiff contends that the Defendants "expressly or tacitly agreed to" are nothing more than bald and conclusory assertions: (1) "intentionally *creating* ... available evidence"; (2) "knowingly using or assenting

19

to the use of *information which was misleading or false*"; (3) "participating in *manufacturing and creating evidence*"; (4) "*withholding and concealing evidence*." These assertions are not entitled to the presumption of truth in the absence of well-pleaded facts and therefore Plaintiff cannot state a claim for civil conspiracy.

**I.      Further Amendment would be futile**

The United States Court of Appeals for the Third Circuit has instructed that a District Court must permit a curative amendment to a Complaint which is vulnerable to dismissal under Federal Rule of Civil Procedure 12(b)(6) "unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3rd Cir. 2008). While leave to amend should be freely granted, "the court need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed." *Baker v. Moon Area Sch. Dist.*, 2018 WL 40571719, at *8 (W.D. Pa. Aug. 27, 2018)(internal quotations and sources omitted). An amendment is deemed to be futile if the Amended Complaint cannot withstand a renewed Motion to Dismiss. *Shane v. Fauver*, 213 F.3d 113, 116 (3rd Cir. 2000).

Here, despite comprehensive attempts to confer regarding the issues raised in this instant Motion to Dismiss, Plaintiff's pleadings with respect to those claims raised against the Erie County Defendants have remained virtually unchanged through two iterations of pleadings. In fact, the only substantial alterations between the first iteration of the complaint to the operative Amended Complaint is the inclusion of the bald or conclusory assertion that ADAs Downing and Horton "leaked" information to the press, fabricated evidence, and withheld exculpatory information from the Court. These serious allegations utterly lacked support in his recitation of underlying facts which has remained unaltered between the two pleadings. It is apparent that Plaintiff is not in possession of any additional facts to support his claims against Officers Kissell,

20

Clark and ADAs Downing and Horton.  Accordingly, further amendment to Plaintiff's complaint should be denied.

WHEREFORE, the Defendants, Alex Kissell, Ashley Clark, Emily Downing, Khadija Horton and Erie County, respectfully request an Order from this Honorable Court granting their Motion to Dismiss dismiss Plaintiff's claims against them, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By: _____
G. Michael Garcia II, Esquire
PA ID No. 311594
717 State Street - Suite 701
Erie, PA  16501
(814) 480-7807

LEGAL/148503019.v1

21

**IN THE UNITED STATES COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TODRICK W. ARRINGTON, JR.,

     Plaintiff

     v.

CITY OF ERIE; MATTHEW J.
GUSTAFSON; JERRY STEVENS; ERIE
COUNTY; ALEX KISSELL; ASHLEY
CLARK; EMILY DOWNING;
KHADIJA HORTON; JOHN DOES
(ERIE COUNTY PRISON
PERSONNEL); VICTORIA HERMANN,

     Defendants

NO.  1:22-CV-226

JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support of Erie County Defendants' Rule 12 Motion to Dismiss has been served upon the following known counsel of record this ___16th___ day of September, 2022, via electronic mail and/or United States First-Class Mail, postage prepaid:

Peter A. Pentz, Esquire
Pentz Law
2409 State Street
Suite A
Erie, PA  16503
*Attorney for Plaintiff*

Patrick M. Carey, Esquire
MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN
717 State Street, Suite 701
Erie, PA  16501
*Attorney for City of Erie Defendants*

_____
G. Michael Garcia II, Esquire