TODRICK W. ARRINGTON, JR.  :
             :
   Plaintiff       :  CIVIL ACTION – LAW
             :
   v.         :
             :
CITY OF ERIE; MATTHEW J.  :  NO. 1:22-CV-00226
GUSTAFSON; JERRY STEVENS; :
ERIE COUNTY; ALEX KISSELL; :
ASHLEY CLARK; EMILY   :
DOWNING; KHADJA HORTON; :
JOHN DOES (ERIE COUNTY  :
PRISON PERSONNEL);    :
             :
   Defendants

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

AND NOW, comes the Plaintiff, Todrick Arrington, by and through his counsel, Peter A. Pentz, Esquire and Pentz Law and files the following Brief in Opposition to Defendants' Rule 12 Motion to Dismiss, stating as follows:

### I.  PROCEDURAL HISTORY

On June 17, 2022, Plaintiff filed an action in the Court of Common Pleas of Erie County Pennsylvania. Plaintiff's Complaint alleged a violation of his constitutional rights in connection with his arrest and detention for an incident occurring on May 30, 2020. The Defendants' filed a Petition for Removal of Civil Action on July 19, 2022. Following the removal of the case to Federal Court, the parties entered into a stipulation with the Plaintiff to file an Amended Complaint on August 26, 2022. On September 13, 2022, Defendants, City of Erie, Matthew J. Gustafson and Jerry Stevens filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12 (b)(6). A similar motion was filed on September 16, 2022 on behalf of Alex Kissel, Ashley Clark, Emily Downing, Khadja Horton and Erie County.

## II.   FACTS

The events leading to the filing of the Plaintiff's Complaint began on May 30, 2020 in Erie Pennsylvania. On that date, at or near Perry Square, a peaceful protest/march was being held in connection with the death of George Floyd with Black Lives Matter. Hundreds of people were present for the march which ultimately concluded at Perry Square. Although the march was peaceful, at some point after the march, some members of the crowd began disruptive behavior causing damage to property in downtown Erie and interacting with the City of Erie Police. At some point that evening, three double parking meters located on the 600 block of State Street were knocked over and dislodged from their base.

Although Plaintiff Arrington was not present at the Black Lives Matter rally, nor anywhere near the location where the rally was being held, he was ultimately charged with damaging the parking meters along with other offenses. The charges against the Plaintiff were brought by Defendant Gustafson, who was assigned to investigate the damage that was caused to the parking meters. In connection with this investigation, Defendant Gustafson viewed a social media video which was posted by Tyquan Young (hereinafter "Young video"). The audio portion of the video includes a loud noise Defendant Gustafson identified as the "meter being shoved off its base and onto the cement." (See Affidavit of Probable Cause) After this sound, the video rotates and the camera quickly and briefly shows a male with a COVID mask on his face, wearing a green hoodie and "camo" pants. The video does not show what caused the noise on the audio, but it does show a damaged parking meter at the feet of the individual. Further, the video does not show how the parking meter was damaged or if the pictured individual was the cause of the damage. The video only shows the aftermath of the damage with the individual wearing the "camo" pants standing beside (at the base of) the parking meter. It appears that a different

2

individual who is just outside the video frame had pulled the meter down and that second person then lifts the meter up and smashes it into the ground. The individual wearing "camo" pants does not participate in the smashing incident and does not flee the scene, remaining in the crowd even as members of the crowd indicate that police are en route.

Because the individual depicted in the Young video was wearing a mask, Defendant Gustafson also viewed a video taken earlier that day from a city surveillance camera (hereinafter "vice video"). In the vice video, Defendant Gustafson identified an individual wearing similar clothing to the individual he saw in the Young video. In the vice video, this individual was not wearing a mask. Defendant Gustafson captured a still photo of this individual from the vice video and then sent it to police personnel in an attempt to identify the individual depicted in the green hooded sweatshirt and "camo" pants.

Defendant Stevens allegedly responded by emailing Defendant Gustafson and indicating that he recognized the person as the Plaintiff. (Affidavit of Probable Cause) No explanation was given as to how this particular identification was made. It was also not indicated whether the individual was also identified from the video or the still photo. Defendant Gustafson also indicated that he ran a JNET picture of the Plaintiff and concluded that he was the person in the video. (Affidavit of Probable Cause) The JNET picture reviewed by Gustafson has not been provided. Defendant Gustafson also indicated that he sent a copy of the still photo that was taken from the vice video to the Erie County Probation Office and Officers Alex Kissel and Ashley Clark apparently identified the individual in the photo as the Plaintiff. (Affidavit of Probable Cause)

With the identifications that were supposedly received from Defendant Stevens, Kissel and Clark, Defendant Gustafson filed for a warrant of arrest, which was issued on July 2, 2020.

3

The Plaintiff was ultimately arrested on July 4, 2020 and immediately taken into custody. Plaintiff was transported to the Erie County Prison where he was incarcerated prior to his trial from July 4, 2020 until his release on August 13, 2021. The Plaintiff went to trial on the charges that were filed against him by Defendant Gustafson in August 2021 and was acquitted on all charges.

While he was incarcerated in the Erie County Prison prior to his trial, the Plaintiff protested his innocence, specifically indicating that he was not the person in either of the videos or the still photo. Plaintiff Arrington has a tattoo of a crown visible on the top of his right hand and wrist. The individual that is pictured in the still photograph from the Vice video does not show a tattoo on the right hand. During his incarceration, the Plaintiff wrote numerous letters identifying an alibi witness and also identifying the tattoo that was on the back of his right hand and wrist. In addition to the Plaintiff, his sister also repeatedly communicated with representatives of the City of Erie and County of Erie in an effort to point out the misidentification of her brother. This exculpatory information was ignored by personnel from the Erie County Prison, City of Erie Police Department and Erie County District Attorney's Office. After the Defendant refused a plea to the offenses, the District Attorney's Office elected to proceed with a criminal trial in which the Plaintiff was acquitted of all charges.

## III.    ARGUMENT

### A.    STANDARD OF REVIEW

The Defendants have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6). Such a motion tests the legal sufficiency of a complaint. Following the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1995 (2007), the lenient "no set-of-facts" test was replaced with the more exacting "plausibility" standard. Accordingly,

4

after <u>Twombly</u> "[to] survive a Motion to Dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is, plausible on its face." <u>SL Manson v. Brathwaite</u>, 97 S. Ct. 2243, 2252 fn. 13 (1977). Although detailed factual allegations are not required, a complaint must contain more than labels and conclusions. A mere recitation of the elements of a cause of action will not suffice. <u>Bell Atlantic Corporation vs. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007).

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, all well-pled allegations are accepted as true and all reasonable inferences should be construed in favor of the non-moving party. <u>Schrob v. Catterson</u>, 948 F.2d 1402 (3d Cir. 1991). The trial court is not permitted to consider the merits of the underlying claim when faced with such a motion. <u>Baldwin v. U.P.M.C.</u>, 636 F.3d 69 (3d Cir. 2011).

If a complaint is subject to a 12 (b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 236 (3d Cir. 2008).

B.   <u>DEFENDANTS MOTIONS TO DISMISS ARE PREMATURE AND SHOULD NOT BE CONSIDERED BY THIS COURT</u>

Rule 12 (d) of the Federal Rules of Civil Procedure states that in motions seeking dismissal for failure to state a claim of action upon which relief can be granted must be considered only in the context of matters contained in the pleadings.

> If, on motion under rule 12 (b)(6) or 12 (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgement under rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FRCP Rule 12 (d)

Courts may consider attachments to the pleadings or documents that are incorporated by reference in the Complaint in deciding such motions; the Courts have also held that even documents or evidence that is not attached as an exhibit to the Complaint and not directly incorporated by reference in the Complaint can be considered if that document or evidence is integral to and the basis for the Complaint and there is no question regarding the validity of the content or authenticity.

In the case at bar, the Defendants have filed motions to dismiss under Rule 12 (b)(6) and with it have attached two videotape segments (City of Erie, Exhibit A and B); a Notice of Alibi Defense and videotape interview of an alibi witness (County Exhibits A and B); a still photo (City of Erie Exhibit C); a police criminal complaint dated June 4, 2020 accompanied by an affidavit of probable cause (City of Erie Exhibit D); Police Criminal Complaint with attached affidavit of probable cause dated June 4, 2020 (City Exhibit D) and one dated November 13, 2020 with attached criminal docket for a unrelated criminal action filed on December 18, 2020 (County of Erie Exhibit C). Defendants apparently assert that all of this evidence, is somehow would be considered part of the Complaint or integral to the allegations in the Complaint. Neither, of course, are the case. The Notice of Alibi, the video of the alibi witness, the criminal complaint and the criminal docket regarding a November 13, 2020 criminal action are not only not material or relevant to the Complaint, they are not even mentioned or referred to in the Complaint. Further, counsel for defendants seem to equate evidence mentioned or implied in the Complaint with evidence integral to the Complaint. The general rule requires a Court considering anything outside the pleadings to convert the motion to one for Summary Judgement and the exception is for documents that are either directly incorporated into the Complaint or information that is central to and the basis of the allegations contained in the Complaint. This is not license

6

for offering anything that helps Defendants arguments, particularly before discovery or exchange of information even takes place. Plaintiff submits that while, arguably, the evidence submitted by the Defendants may be somehow relevant, it is not central to the Complaint or indispensable to the allegations made.

As a result, the Plaintiff requests that motions to dismiss filed by the Defendants be dismissed as premature in that they request that this Court consider evidence not contained directly in the pleadings and the Plaintiff was not provided notice of conversion of the pending motions to dismiss into motions for summary judgement. The Plaintiff should be permitted opportunity for discovery and exchange of information, and the ability to submit evidence contrary to or at least relevant to the issues raised in the motion to dismiss. Since no notice was given and no discovery has been undertaken, it is not appropriate for the Defendants to request that this Court rule on Motions to Dismiss under Rule 12 (b)(6) while offering and arguing, facts and evidence outside the Complaint.

C.    1983 ACTIONS: COUNT 1 – DEFENDANT STEVENS ACTIONS, AS PLED, WITHSTAND DEFENDANTS' 12 (B)(6) MOTION

Count I of the Plaintiff's Complaint alleges that Defendants Gustafson and Stevens, acting in their official capacity and/or individual capacity, acted, under color of State law, in a manner that violated the Plaintiff's constitutional rights guaranteed by Section 1983 and the 4th and 14th Amendments of the United States Constitution. It is alleged that the Defendants acted in a manner without lawful justification and with deliberate indifference and reckless disregard for the natural and probable consequences of their acts.

Defendant Stevens, asserts that to maintain a Section 1983 action against him, he must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation in which he neither participated in nor approved. Defendant cites to the

case of <u>Saisi v. Murray</u>, 822 F. Appx. 47, 48 (3d Cir 2020) *quoting* <u>Baraka v. McGreevey</u>, 481

F.3d 187, 210 (3d Cir. 2007) (*citations omitted*). Defense counsel argues that because Defendant

Stevens only involvement was his identification of the Plaintiff and possibly testifying in pretrial

and trial proceedings and it should be assumed he was not personally involved in any

constitutional violations, and is entitled to be dismissed from this action. Plaintiff submits that

such an argument makes assumptions most favorable to the moving party, instead of the direct

opposite, which is required.

   A review of the cases listed by Defendant Stevens shows that there is a distinction

between these cases and the actions of Stevens in the instant matter. In each of the decisions, the

Court correctly indicates that liability in a civil rights action must be predicated upon personal

involvement. However, in all of these cases, there was no personal involvement by the

individuals against whom the Plaintiff asserted a Section 1983 action. In <u>Saisi v. Murray</u>, the

Court discussed the extent of "supervisory liability," noting that a supervisor can be held liable

only where he or she participated in violating the Plaintiff's rights, directed others to violate

them, or as the person in charge, had knowledge of and acquiesced in his subordinate's

violations. In <u>Saisi</u>, the Plaintiff asserted that the Defendants were liable for the unconstitutional

conditions of his confinement under a theory of respondeat superior or supervisory liability. *Id.*

at 48. Likewise, in <u>Baraka</u>, the Court held that because there is no respondeat superior liability

under Section 1983 and the named Defendants could not be held liable for the actions of the

unknown Defendants. *Id.* at 210. Finally, in <u>Vantassel v. Piccione</u>, 608 F. Appx. 66, (3d Cir.

2015) Plaintiff asserted a civil rights action against defendants in which she asserted very general

and non-specific allegations that the defendants conspired generally, "corrupted the judicial

process" or "violated her rights." The Court noted that these were all legal conclusions which are insufficient to state a claim and granted the Motion to Dismiss. *Id.* at 69-70.

In this case, it is alleged that the Defendant Stevens wrongly identified a photograph or video of a person as being the Plaintiff. There was no basis or explanation given as to how this identification was made, whether Stevens had any idea what Plaintiff looked like or whether Gustafson had "suggested" the identification, or whether Defendant Stevens referred to police records or any other information. Plaintiff alleges that this involvement by Defendant Stevens, violated the Plaintiff's constitutional rights by acting in a manner as set forth in paragraph 48 of the Plaintiff's Amended Complaint. Specifically, Plaintiff alleges that Stevens, fabricated and or manufactured evidence to obtain an arrest warrant and which let to the Plaintiff's arrest and being accused of a crime. In Stevens case, this involved either recklessly or intentionally asserting the pictured individual was Plaintiff when he knew that was inaccurate and that his identification would lead to issuance of an arrest warrant (without probable cause) and the violation of Plaintiff's Constitutional rights. Liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion. Berg v. County of Allegheny, 219 F. 3d 261,272 (3d Cir.2000). Accordingly, accepting the allegations of the Complaint, the actions of Defendant Stevens were reckless or intentional and his personal involvement was an essential and motivating factor leading to the unlawful arrest of Plaintiff.

D.   THE PLAINTIFF HAS SUFFICIENTLY PLED A CONSPIRACY TO
WITHSTAND THE DEFENDANTS' 12 (B)(6) MOTION

Plaintiff's Amended Complaint has alleged a conspiracy among the Defendants, to violate the Plaintiff's civil rights. The allegations against the Defendants  include: agreeing in the

misidentification of the Plaintiff as the perpetrator of a crime and as the individual pictured in the video tape; using or assenting to the use of information that was misleading or false when there was no evidence of the Plaintiff's wrongdoing and insufficient evidence to support a warrant for arrest; intentionally creating, misinterpreting and misusing available evidence in order to falsely accuse the Plaintiff of a crime; and knowingly using or assenting to the use of information which was misleading or false when there was no evidence of the Plaintiff's wrongdoing and insufficient evidence to support a warrant for arrest. Plaintiff's Complaint paragraph 83b-c.

In order to properly plead a cause of action for conspiracy under Section 1985, Plaintiff must allege that persons acting under color of State Law conspired to deprive him of a federally protected right. Gannaway v. Berks County. Prison, 439 Fed. Appx. 86, 92 (3d Cir.2011). . Eichelman v. Lancaster County, 510 F. Sup. 2d 377, 392 (E.D.PA  2007) *citing* Marchese v. Umstead, 110 F. Supp. 2d 361 (E.D.Pa 2000). Plaintiff has alleged that the Defendants conspired to violate his civil rights as set forth in Counts I through VII of his Complaint.

In Thomas v. City of Chester, 2016 WL 1106 900 (W.D.Pa.) (memorandum opinion), Plaintiffs brought a civil rights action arising out of the search of a house and arrest of the occupants. The Plaintiff's Complaint included a conspiracy claim to which the Defendants filed a 12 (b)(6) Motion to Dismiss for failure to plead sufficient facts. The Plaintiffs alleged that when the defendants executed the search warrant, they agreed to indiscriminately arrest individuals present in the home without examining whether there was probable cause to arrest those individuals. Thomas at 3. The defendants argued that this was a mere conclusion and that the Plaintiff did not plead that she or anyone else had direct knowledge of the alleged agreement or plan and that no facts were plead from which a conclusion could be drawn that an agreement was reached. The Court disagreed and indicated that the Complaint contained more than a conclusory

statement of the law. It was found that the Plaintiff averred an agreement occurred and outlined the general nature of that agreement. The Court indicated that a Plaintiff, *prior to discovery*, is not required to produce evidence of the existence of the alleged agreement or plan.

The Plaintiff in this case has likewise plead that there was an agreement by the Defendants to misidentify the Plaintiff as the perpetrator of a crime and as the individual that was pictured in the videotape. It is submitted that the allegations of conspiracy are sufficient to withstand a motion to dismiss. Alternatively, the Plaintiff should be permitted to file an Amended Complaint to respond to the Defendants' 12 (b)(6) Motion.

E.    THE PLAINTIFF HAS SUFFICENTLY ALLEGED A CLAIM OF FALSE ARREST AND IMPRISONMENT

Plaintiff alleges that Defendants Gustafson, Stevens and City of Erie violated his rights as a citizen by falsely arresting him without probable cause and/or arresting him with a warrant that was obtain illegally. These improper actions of the Defendants resulted in the Plaintiff being incarcerated and imprisoned for over one year. The Defendants' 12 (b)(6) motion is based upon an allegation of probable cause for the Plaintiff's arrest.[1]

Simply put, probable cause is a factual determination that exists if there is a fair probability that the person committed the crime. Wilson v. Russo 212 F.3d 781, 787 (3d Cir. 2000), *quoting* Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997). Probable cause exists where the totality of the facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed the offense. Sharrar v. Felzing, 128 F.3d 810, 817-18 (3d Cir.1997). Probable cause is determined by the sufficiency of "facts available to

---

[1] The Plaintiff will address the claim against the City of Erie in that section of his reply brief discussing his Monell claim (Argument G). Liability of Defendant Stevens is dependent on whether probable cause existed for the actions taken by Defendant Gustafson.

the officer at the moment of arrest." Beck v. State of Ohio, 85 S. Ct. 223, 225 (1964). Probable

cause does not require evidence sufficient to establish guilt beyond a reasonable doubt. Barna v.

City of Perthamboy, 42 F.3d 809, 819 (3d Cir.1994) *citing* Henry v. United States, 80 S. Ct. 168,

171 (1959).

The Defendants have indicated that the information gathered by Defendant Gustafson in

formulating the basis of probable cause in part consisted of a review of the Young video.  (City

of Erie's Exhibit A). Admittedly, Defendants concede that the video did not depict the actual

crime that the Plaintiff was charged with. There is merely a noise on the video and at that point,

the camera turns to momentarily depict an individual wearing a dark green hooded sweatshirt

and camouflage pants, wearing a COVID mask on his face. The person wearing this clothing is

said to be standing over the broken parking meter. However, this particular individual is never

seen in contact with the parking matter. Actually, another individual who initially is just outside

the frame of the video, is in the best position to have pulled down the meter and this person is

seen picking up the meter and smashing it onto the sidewalk.[2] Therefore, the Young video itself

simply does not support a conclusion that the individual standing behind the fallen parking meter

committed any crime, or at the very least, an issue of fact exists on this issue.

Officer Gustafson then reviewed a second video that was taken by a surveillance camera.

This was identified as the "vice video." In that video, an individual is also observed wearing a

green hooded sweatshirt and camouflaged pants, with his mask lowered from his face. Gustafson

then created a still photograph from that video of this individual. The apparent purpose of this

---

[2] Using common sense in trying to interpret the video, the person who is just off of the frame (left) in the Young video at 20:05 would be in the position one would most likely be in to pull down the parking meter as the leverage needed to have the power to pull the meter would dictate a pulling toward one's body. A person standing "behind" the fallen parking meter (such as the individual in the "camo" pants) would not have leverage or position of strength to simply push the meter to the ground.

was to attempt to identify this individual as the individual standing at the fallen parking meter in the Young video. Apparently by this time Gustafson had decided that if he could have this still photo identified, that he was willing to jump to the conclusion that his individual committed some crime.

It should be noted that Defendant Gustafson made a conclusion that the individual depicted in the green hooded sweatshirt and camouflage pants had committed a crime without actually making an observation of this. This is the case even though a different individual was seen picking up the parking meter and smashing it into the sidewalk. No effort was made in the investigation to determine whether the Plaintiff was even present at the scene. This was the case notwithstanding the fact that hundreds of individuals were present. However, none of those individuals, even those depicted in the videos, were interviewed.

Having made a determination that the individual depicted in the green hooded sweatshirt and camouflage pants had committed a crime, Defendant Gustafson sent a copy of the still photograph from the videotape to the police department to determine whether anyone could identify this individual. It was indicated that Defendant Stevens contacted Defendant Gustafson and told him that he recognized the person as the Plaintiff. (Affidavit of Probable Cause). A copy of the photograph was also sent to the Erie County Adult Probation Department. In response, county probation officers Alex Kissel and Ashley Clark both identified the individual in the photo as the Plaintiff. (Affidavit of Probable Cause). Based upon the identification of the Plaintiff by these three individuals, Defendant Gustafson sought a warrant for the arrest of the Plaintiff.

A Plaintiff may succeed in a Section 1983 action for false arrest made pursuant to a warrant if the Plaintiff shows, by a preponderance of the evidence, (1) that the police officer

13

"knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for the warrant," and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000), Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997).

It is undisputed that Defendant Gustafson did not actually observe a crime being committed on the Young video. Based upon a sound on the video, he made an assumption that this was the sound of a parking meter being pushed to the ground. No one is seen committing this act. It is also undisputed that Defendant Gustafson never observed the individual, who he identified in the green hooded sweatshirt and camo pants, in contact with the parking meter. To the contrary, the video depicts another individual who actually picks up the meter and throws it to the ground. Although a number of individuals are depicted in the video, Defendant Gustafson also made an assumption that the individual in the green sweatshirt and camo pants was the one who was involved in the crime. Although hundreds of individuals are depicted in the vice video and Young video, Defendant Gustafson never did any interviews to determine whether the Plaintiff was present at the scene. Although it is indicated that Defendants Stevens, Kissel and Clark identified this individual as the Plaintiff, it is not known how these identifications were made.

Counsel for Defendant Gustafson notes that in assessing the reliability of an identification procedure, the totality of circumstances analysis requires the Court to consider: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the witness's accuracy in the prior description of the criminal; (4) the witness's level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and confrontation. Defendant brief at page 12, citing United States v. Atkinson, 216 Fed. Appx. 93,

96 (3d Cir. 2008). Based upon the information currently available, it is not possible to make a determination of the reliability of the identification procedure of the three individuals or even if any of the factors supported reliability. Based on Plaintiff's Complaint, these Defendants did not have a basis for making a reliable identification. Instead, these Defendants simply and recklessly (or intentionally) falsely identified to help out Defendant Gustafson in "creating" probable cause for the arrest warrant.

Defendant Gustafson also was privy to police records relating to the Plaintiff. After supposedly learning of the identity of the Plaintiff, Defendant Gustafson also forwarded a copy of the photograph from the video to the probation department. At this point, it is unknown what information was available to Defendant Gustafson. This could have included information about the Plaintiff, such as identifying marks, and included information regarding the tattoo on the Plaintiff's right hand. Although exculpatory evidence must be known to an officer at the time of arrest or the application of a warrant, an officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence, standing by itself, suggests that probable cause exists. Wilson v. Russo, *Id.* at 790, *quoting* Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999). At this point we do not know what information Gustafson had at his disposal.

The Court is permitted to conclude that probable cause existed as a matter of law if the evidence viewed a manner most favorable to the non-moving party reasonably could not support a contrary factual finding. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788-89 (3d Cir. 2000). As indicated, there are a number of disputed factual issues which preclude the finding that Defendant Gustafson had probable cause as a matter of law. At this stage of the proceedings, the numerous issues of fact prevent such a determination from being made. It cannot be said that

viewing the evidence in favor of the non-moving party would not support a contrary factual finding. Accordingly, it is requested that the Defendants' motion be denied.


F.     WITNESS IMMUNITY – DEFENDANTS GUSTAFSON AND STEVENS

Defendant Stevens argues that he should be entitled to absolute witness immunity since his only involvement in the case was his identification of the Plaintiff and, perhaps, later testimony at a preliminary hearing and trial. Although citing cases providing for absolute immunity in the context of trial and pretrial proceedings, counsel for the Defendant acknowledges that case law does not exist extending absolute witness immunity to non-testimonial or out-of-court statements identifying a criminal defendant from a photograph or video. Defendants' brief at paragraph 15.

Although the Third Circuit has extended absolute immunity to testimony at trial and some pretrial proceedings, this position is not equally shared by other circuits. In Williams v. Hepting, 844 F.2d 138, 143 (3d Cir. 1998) the Court noted that other jurisdictions do not extend absolute immunity to a pretrial setting. *Citing* Anthony v. Baker, 767 F.2d 657, 663 (10th Cir. 1985) (Absolute immunity not extended to grand jury testimony); and Wheeler v. Cosdon Oil and Chem. Co., 734 F.2d 254, 261 (5th Cir.), [*mod. on different grounds*, 744 F.2d 1131 (5th Cir. 1984).] (Absolute Immunity not extended to testimony of state official at probable cause hearing). In general, there is reluctance to grant absolute immunity in any situation other than trial testimony and certainly there is no basis to extend it to out of court statements or pre-judicial investigation.

Likewise, the law does not support a grant to Defendants Gustafson and Stevens of qualified immunity. Whether a government official is shielded by qualified immunity requires a

16

reviewing Court to look to the objective reasonableness of the official's actions alleged to have violated the Plaintiff's rights. <u>Anderson v. Creighton</u>, 107 S. Ct. 3034, 3038 (1987). Plaintiff has alleged that the Defendants were engaged in fabricating and or manufacturing evidence to obtain an arrest warrant and to arrest the Plaintiff for a crime that he did not commit. Based upon the unresolved material facts which exist, it is not possible to make a determination of the qualified immunity of Defendants Gustafson and Stevens at this time based upon a motion to dismiss.

### G.   <u>MONELL CLAIMS</u>

In counts II, V, VII and IX of the Plaintiff's Amended Complaint, he sets forth <u>Monell</u> Claims against the City of Erie and County of Erie. Both the City and the County have filed motions to dismiss the <u>Monell</u> claims for failure to identify a specific policy, practice or custom that was the moving force behind a violation of the Plaintiff's constitutional rights.

In count II of the Plaintiff's Complaint against the City of Erie, it is alleged that the city police department had actual and/or defacto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct by its officers. Plaintiff also alleged that the city failed to properly train, supervise or discipline its police officers concerning investigation of crimes, avoidance of racial profiling, assessment of probable cause and dealing with exculpatory evidence. It is further alleged that the training was deficient to the extent that it was likely to result in violation of constitutional rights by the police officers. Plaintiff alleges that the City was aware of such a lack of training and supervision and acted with deliberate indifference in failing to establish a program of effective training. He further claims that lack of proper training created the existence of likelihood of future occurrences. Plaintiff's Complaint paragraphs 52-55.

With regard to the County of Erie, the Plaintiff has asserted Monell Claims in connection with activities at the County Probation Office the District Attorneys' Office as well as the Erie County Prison. Plaintiff alleges that the Defendant had actual and/or defacto policies, practices and customs or failed to properly train, supervise and discipline its probation officers in connection with identification of perpetrators during crime investigations. Additionally, it is alleged that the County of Erie was aware of such a lack of training, supervision and discipline and that there were recurrent circumstances which created a potential danger to constitutional rights of citizens in the future. Plaintiff's Complaint paragraphs 66-69.

In the Monell action filed in connection with the Erie County Prison, Plaintiff alleged that prison personnel, including security guards and administration, subjected him to cruel and unusual punishment in violation of his 14th amendment rights under the United States Constitution. These actions included placing the Plaintiff in a cell with another inmate when they knew this would result in physical assault and harm to the Plaintiff; requiring the Plaintiff to spend 23 out of every 24 hours in isolated confinement; and ignoring Plaintiff's need for medical and psychological treatment. Plaintiff's Complaint paragraphs 88-90. These actions were attributable to actual and/or defacto policies, practices, customs and usages by Defendant, County of Erie. Erie County created or facilitated a policy or custom that caused the constitutional violations to the Plaintiff. It was further alleged that Erie County violated the Plaintiff's constitutional rights by not properly hiring, training and controlling its employees such that they would not act in a manner with deliberate indifference to the Plaintiff's health and safety and in violation of his constitutional rights. Plaintiff's Complaint paragraphs 92 and 93.

Plaintiff further alleges that the County had policies, practices, customs and usages that were a direct and proximate cause of unconstitutional conduct by individually, including

18

Defendants Downing and Horton. Alternatively, it is alleged that the County failed to properly train, supervise and discipline assistant district attorneys in properly handling exculpatory evidence and determining whether to pursue prosecution. Defendant was aware that such lack of training lead to improper conduct and that training would have lessened the risk for recurrent circumstances. Plaintiff's Complaint paragraphs 76-79.

Defendants assert that in order to sustain a <u>Monell</u> municipal liability claim, a Plaintiff must first identify a municipal policy or custom that caused the injury and then must also establish a direct causal link between the policy or custom and the constitutional deprivation.

"[T]he due process clause does not impose an affirmative obligation on the state to protect its citizens" <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 431 (3d Cir. 2006) <u>citing</u> <u>DeShaney v. Winnebago Cnty. Dep't of Social Services</u>, 489 US 189, 195-96 (1989). However, there are two established exceptions to this rule. One exception is where the state actor uses its authority "in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention." <u>Bright v. West Morlan Cnty.</u>, 443 F.3d 276, 281 (3d Cir. 2006). When prison officials act with "a deliberate indifference" to an inmate's welfare, liability will follow for substantive due process violations. <u>Schieber v. City of Philadelphia</u>, 320 F.3d 409, 418-19 (3d Cir. 2003).

Placing the Plaintiff into a cell with another inmate when officials knew that this would result in a physical assault and harm to the Plaintiff certainly constitutes deliberate indifference to the Plaintiff's welfare. This is also true in connection with the confinement of the Plaintiff for 23 out of 24 hours a day and the deliberate indifference to his need for medical and psychological treatment. The policies and practices of the City of Erie and County of Erie and/or

their failure to properly train their personnel resulted in this constitutional violation of the Plaintiff's rights to support a <u>Monnel</u> claim.

Plaintiff respectfully submits that the allegations set forth in the Amended Complaint constitute a proper pleading establishing a <u>Monell</u> claim to defeat the Defendants' Rule 12 (b) (6) motion. To the extent that the Court deems the pleading insufficient, it is respectfully submitted that the Plaintiff be permitted to file an Amended Complaint

H.   <u>1983 CLAIMS AGAINST DEFENDANTS ALEX KISSEL AND ASHLEY CLARK</u>

The Plaintiff asserts a 1983 claim against Defendants Kissel and Clark at Count IV of his Complaint alleging violations of his 4th and 14th amendment rights (Complaint at paragraph 61-64). Specifically, Plaintiff alleges that Defendants Kissel and Clark "falsely identified" Plaintiff as the person pictured in the photograph sent by Defendant Gustafson. Plaintiff further alleged that these actions were done "with knowledge that this misidentification would support an arrest warrant leading to the arrest and incarceration of the Plaintiff for a crime that he did not commit." Plaintiff's Complaint paragraph 63 a and d.

Defendants argue that neither Defendant Kissel nor Clark were responsible for initiating criminal proceedings against the Plaintiff or arresting the Plaintiff which constitute act necessary for establishing either a 4th and or 14th amendment claim for false arrest and/or malicious prosecution. However, as is noted with Defendant Stevens, 1983 liability for unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion. <u>Berg v. County of Allegheny</u>, <i>Id.</i> at 272. In this case the allegations against Kissel and Clark are similar to those against Stevens and for the same reasons, the Motion to Dismiss should be denied.

Defendants also argue that, contradictory to Plaintiff's allegation that neither Defendant Kissel nor Clark had personal knowledge of Plaintiff's appearance or familiar enough with him to identify him from a photograph, Plaintiff had been resentenced to a term of probation the week prior to May 30, 2020. Defendants' brief at page 8. Obviously, this is a question of fact that prevents dismissal. Further, it should be noted that this was the height of COVID and many business and offices were utilizing alternative methods in order to avoid face to face contact. As indicated previously, there is no indication as to how Defendants Kissel and Clark were able to identify the Plaintiff from the photograph that was sent by Defendant Gustafson. Alternatively, had they met the Plaintiff face to face, they would have been able to observe the tattoo on the back of his right hand. The photograph that was sent by Defendant Gustafson to Defendants Kissel and Clark clearly show an individual that is present with the back of both of his hands visible. To the extent that there are undetermined issues of fact, the Defendants motion to dismiss is improper at this stage of the proceedings.

I.   THE PLAINTIFF HAS ALLEGED AN EXCEPTION TO THE DEFENDANTS' QUALIFIED IMMUNITY TO DEFEAT THE DEFENDANTS' MOTION TO DISMISS

Defendants allege that they are entitled to qualified immunity for a mistake of either law or fact in the identification of the Plaintiff. In the Plaintiff's Complaint, he alleges that Defendants' Kissel and Clark undertook actions "[f]alsely identifying Plaintiff as the person pictured in the photograph sent by Defendant Gustafson and thereby falsely accusing Plaintiff of a crime"; and "[p]roviding illegal and improper witness against Plaintiff without knowledge of the accuracy of the statements provided and with full knowledge of the natural and probable consequences of their actions i.e. Plaintiff's arrest and incarceration." Plaintiff's Complaint paragraph 63 a and b. To the extent that these allegations involve a mistaken belief, it is

necessary for the Court to determine whether or not the Defendants' mistake was reasonable under the circumstances. Qualified immunity requires a Court to look to the objective reasonableness of the officials actions alleged to have violated the Plaintiff's rights. Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). The Defendants maintain the reasonableness of their identification of the Plaintiff based upon the fact that a week prior to the incident on May 30, 2020, Plaintiff had contact with the Erie County Adult Probation Department. As a result, they argue that, even if mistaken, this was insufficient to overcome their entitlement to qualified immunity. Defendants' brief pages 10-11.

As indicated previously, there is nothing in the record to indicate how the Defendants were able to identify the Plaintiff. If in fact it was based upon a face to face meeting with the Plaintiff, the question becomes whether the Defendants had observed the tattoo on the Plaintiff's right hand that was not present on the individual in the photograph that they identified as the Plaintiff. Likewise, there is an issue as to whether or not the Erie County Adult Probation Department was seeing individuals personally during this period of time or whether another non-face to face procedure was being utilized. It is not even known who from the probation office saw Plaintiff (if anyone) and for how long, where it was, with or without a mask, etc. Without this information, the reasonableness of their identification cannot be ascertained.

Additionally, Plaintiff's Complaint alleges that the actions of Defendants Kissel and Clark were intentional. It is alleged that they "[k]nowingly provided misidentification of the Plaintiff with knowledge that this independent misidentification would support an arrest warrant leading to the arrest and incarceration of the Plaintiff for a crime that he did not commit." Plaintiff Complaint at paragraph 63 d. Qualified immunity gives government officials "breathing room" to make reasonable but mistaken judgements about open legal questions; it does not,

22

however, protect "the plainly incompetent or those who knowingly violate the law." <u>Ashcroft v.</u>

<u>al-Kidd</u>, 131 S. Ct. 2074, 2085 (2011) (*cite omitted*).

Based upon unresolved questions of fact concerning the reasonableness of the

Defendants' actions and/or their intentional action in violating the Plaintiff's constitutional

rights, the Defendants' motion to dismiss is not appropriate.

H.   <u>DEFENDANT DOWNING IS NOT ENTITLED TO PROSECUTORIAL IMMUNITY</u>

Defendant Downing is seeking a Motion to Dismiss based upon her immunity from

damages arising out of her official acts.[3]

In <u>Berg v. County of Allegheny</u>, 219 F.3d 261 (3d Cir. 2000), the Court affirmed

Summary Judgement in favor of a warrant clerk and supervising probation officer who

inadvertently created an arrest warrant for the Plaintiff which caused him to be arrested and

incarcerated. In that case, the Third Circuit entertained but did not reach a decision on whether

the warrant clerk could be held liable under a due process "deliberate indifference" theory. *Id.* at

274.

This particular issue was addressed by the District Court in <u>Nelling v. County of</u>

<u>Delaware</u>, 212 WL 3996113 (EDPA). In <u>Nelling</u>, Plaintiff filed a civil rights action arising out of

a bench warrant that had not been properly removed from the National Crime Information Center

system. The Plaintiff brought a 1983 action against her probation officer for false imprisonment

and violation of her rights under the 4th and 14th amendments. The Plaintiff had been found

guilty of theft by unlawful taking and was placed on immediate parole. On July 17, 2009, her

---

[3] The Plaintiff does not take any position with regard to the Motion to Dismiss filed on behalf of the Defendant Khadija Horton.

probation officer requested that the Court of Common Pleas issue a bench warrant for her arrest as a result of her failure to pay restitution under the terms of her parole. However, when the Plaintiff subsequently paid the restitution, the probation officer requested that the bench warrant be rescinded. While the warrant was rescinded, it was never removed from the NCIC. When the Plaintiff was later involved in a dispute, a search of the NCIC system showed the warrant and the Plaintiff was arrested on October 2, 2010. She was incarcerated and not released until October 21, 2010. Plaintiff alleged that on October 4, 2010, her probation officer was informed of her incarceration but ignored the notice and did not take any action to arrange for her release.

The Nelling Court pointed out that in the Berg decision the clerk did not learn of the mistake until five days after the arrest which was too late for her to recall the warrant and thus she could not have acted with deliberate indifference. Nelling*4 *citing* Berg at 274. The Plaintiff in Nelling argued that the case was distinguishable because her probation officer learned of the incarceration prior to her being released from prison. She argued that the Defendant knew of her incarceration 17 days before she was released. The Court ultimately determined that Defendant "could not have rescinded the warrant after it was executed, therefore, that cannot form the basis for a due process claim." *Id.* * 5.

Unlike the probation officers in Berg and Nelling, Defendant Downing did have the ability to have dismissed charges against the Plaintiff based upon the knowledge of the exculpatory evidence that she was presented with. Plaintiff alleges that the Defendant withheld or knowingly ignored exculpatory evidence. Complaint paragraph 72 c. Accordingly, this case is different from those decisions and should not support the Defendants' motion to dismiss.

Also, it is submitted that Defendant Downing's actions included some outside of her prosecutorial responsibilities such as leaking information to the press and conspiratorial liability

for investigative and administrative functions. Plaintiff believes that until Plaintiff is able to conduct discovery on these allegations that any dismissal is premature.

## V.    **CONCLUSION**

For the above stated reasons, Plaintiff requests that the Defendants' Motions to Dismiss be denied. In the Alternative, the Plaintiff requests an opportunity to file an Amended Complaint as to those allegations where the Court deems that the Pleading is insufficient.

Respectfully submitted,

By: _____

Peter A. Pentz, Esquire
2409 State Street, Suite A
Erie, PA  16504
(814) 651-0695