### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TODRICK W. ARRINGTON, JR.,   )
         **Plaintiff**       )     **C.A. No. 22-226 Erie**
                 )
**v**               )     **District Judge Susan Paradise Baxter**
                 )
**CITY OF ERIE, et al.,**     )
         **Defendants**     )

## MEMORANDUM OPINION

## I.    INTRODUCTION

### A.    Relevant Procedural History

Plaintiff Todrick W. Arrington, Jr., an adult resident of Erie County, Pennsylvania, initiated this civil rights action in the Court of Common Pleas of Erie County, Pennsylvania. The action was removed to this Court pursuant to a Notice of Removal filed by Defendants on July 19, 2022. Plaintiff subsequently filed an amended complaint [ECF No. 3] on August 26, 2022, which is the operative pleading in this case. Named as Defendants in the amended complaint are: City of Erie ("Erie"); Matthew J. Gustafson ("Gustafson"), a detective with the City of Erie Police Department ("EPD"); Jerry Stevens ("Stevens"), a police officer with the EPD; Erie County ("Erie County"); Erie County Probation Officers Alex Kissell ("Kissell") and Ashley Clark ("Clark"); Erie County Assistant District Attorneys Emily Downing ("Downing") and Khadja Horton ("Horton"); and unnamed John Doe Defendants who are unidentified prison guards and personnel employed at the Erie County Prison.

Plaintiff's claims arise from his arrest on July 2, 2020, and subsequent detention at the Erie County Prison from July 4, 2020 to August 13, 2021, stemming from an incident that

occurred on May 30, 2020, during a public protest that was held in connections with Black Lives Matter in downtown Erie. On that date, three double parking meters in the downtown area were damaged by a black male who was subsequently misidentified as the Plaintiff. Plaintiff was ultimately acquitted of all criminal charges that were brought against him, in August 2021, and this suit followed.

The amended complaint contains nine counts, asserting the following claims: Count I is asserted against Defendants Gustafson and Stevens for violation of Plaintiff's rights under the fourth and fourteenth amendments to the United States Constitution; Count II is asserted against Defendant Erie for failure to properly train, supervise, and discipline its police officers; Count III is asserted against Defendants Gustafson, Stevens, and Erie for false arrest and imprisonment; Count IV is asserted against Defendants Kissell and Clark for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments; Count V is asserted against Defendant Erie County for failure to properly train, supervise, and discipline its probation officers; Count VI is asserted against Defendants Downing, Horton, Gustafson, and Stevens for malicious prosecution; Count VII is asserted against Defendant Erie County for failure to properly train, supervise, and discipline its assistant district attorneys; Count VIII asserts a claim of conspiracy against all Defendants; and Count IX is asserted against Defendant Erie County and the John Doe Defendants for violation of Plaintiff's Fourteenth Amendment rights.

On September 13, 2022, Defendants Erie, Gustafson, and Stevens (hereafter collectively referred to as "Erie Defendants") filed a motion to dismiss asserting that Plaintiff has failed to assert a claim against them upon which relief may be granted [ECF No. 7]. On September 16, 2023, the remaining Defendants Kissell, Clark, Downing, Horton, and Erie County (hereafter

collectively referred to as "Erie County Defendants") filed their own motion to dismiss, or alternative motion for more definite statement [ECF No. 10]. Plaintiff has since filed a brief in opposition to both motions [ECF No. 14]. This matter is now ripe for consideration.

### B.      Relevant Factual History[1]

On May 30, 2020, a public protest was held in downtown Erie in support of the Black Lives Matter movement (Id. at ¶ 15). Sometime during the night, three double parking meters located on the 600 block of State Street were knocked over and dislodged from their bases. (Id. at ¶ 17). The next day, Defendant Gustafson was assigned to investigate the damage to the parking meters. (Id. at ¶ 20). At some point during his investigation, Gustafson viewed a social media video posted by an individual named Tyquan Young ("Young video"), which contained an audio clip of a loud noise followed by a video image of a black male wearing a COVID mask on his face, a green hoodie, and "camo pants" standing over a broken parking meter (Id. at ¶ 21; ECF No. 3-1).

In addition to the Young video, Gustafson also viewed a video received from EPD's vice unit ("vice video"), which was taken earlier in the day on May 30, 2020, and depicted hundreds of people walking across South Park Row near State Street during the Black Lives Matter march. (Id. at ¶ 23). Defendant Gustafson believed that one of the individuals in the vice video was the same person he had seen in the Young video, but without the mask. (Id. at ¶ 24). So, he made an

---

[1] The Court accepts as true all well-pleaded allegations of the amended complaint, as is required for purposes of determining Defendants' motions. In addition, the factual history includes information contained in Defendant Gustafson's Affidavit of Probable Cause, dated June 4, 2020, which is attached as an exhibit to Plaintiff's amended complaint.

enlarged still photo of the person in the vice video and sent it to police personnel to see if anyone could identify him. (Id. at ¶ 25). In response, Defendant Stevens emailed Defendant Gustafson and indicated that he believed the individual in the photo to be the Plaintiff. (Id. at ¶ 26). After Defendant Stevens identified Plaintiff, Defendant Gustafson secured a photograph of Plaintiff from Pennsylvania's Justice Network ("JNET") and independently concluded that the individual in the videos was Plaintiff. (ECF No. 3-1). Defendant Gustafson then contacted Defendant Kissell, Plaintiff's probation officer, to ask if the person in the still photo was Plaintiff, and Defendant Kissell responded that "he believed it was." (Id. at ¶ 27). Defendant Kissell then asked his supervisor, Defendant Clark, to confirm that the person in the photo was Plaintiff. (Id. at ¶ 28).

Plaintiff notes that he has had a "clearly visible" crown tattoo on the top of his right hand and wrist since, at least, 2018, and that the individual in the vice video did not have any tattoo on his right hand (Id. at ¶¶ 29-30). Nonetheless, based on the identification of Plaintiff by Defendants Stevens, Kissell, and Clark, Defendant Gustafson prepared an Affidavit of Probable Cause on June 4, 2020, charging Plaintiff with Riot and Criminal Mischief in connection with the damaged parking meters. (Id. at ¶ 32; ECF No. 3-1). Plaintiff was subsequently arrested on or about July 2, 2020 (Id. at ¶ 22). After his arrest, Plaintiff was taken to ECP, where "it was clear prison personnel were already aware of the allegations and factual scenario that led to Plaintiff's arrest." (Id. at ¶ 34).

Plaintiff remained incarcerated at ECP from on or about July 4, 2020, to on or about August 13, 2021. (Id. at ¶ 39). During this time, Plaintiff was placed in a cell with "a violent and known racist criminal" and, despite his pleas for safety, was required to remain with the

cellmate, which "resulted in the plaintiff being assaulted repeatedly." (Id. at ¶ 44). Plaintiff began to suffer physical and mental problems that were initially ignored by ECP personnel, and then after he was eventually prescribed medication for his mental condition, the medication was later "inexplicably discontinued by the Erie County employees without a medical basis." (Id. at ¶ 45).

Over the course of his imprisonment, Plaintiff continually protested his innocence, arguing that he was not the individual in the photograph and producing exculpatory evidence, including an alibi witness statement and photographs of his tattoo; however, his protestations were ignored by Defendants. (Id. at ¶ 35, 37). With regard to his alibi, Plaintiff alleges that "at all relevant times on May 30, 2020 and May 31, 2020" he was at a family member's residence located at 628 East 24th Street with his friend, Daeojzhanae Nobel ("Nobel"). In addition, Plaintiff's sister "repeatedly communicated with representatives of the City of Erie and the County of Erie in an effort to point out the misidentification of her brother." (Id. at ¶ 36). Nonetheless, the district attorney's office elected to proceed with a criminal trial, which ultimately ended in Plaintiff's acquittal of all charges (Id. at ¶¶ 40-41, 43).

## II.   DISCUSSION

### A.   Official Capacity Claims Against Individual Erie County Defendants

The Erie County Defendants have moved to dismiss Plaintiff's claims against Defendants Kissell, Clark, Downing, and Horton in their official capacities because they are redundant of Plaintiff's municipal liability claim against Defendant Erie County. The Court agrees.

It is well-settled that "[a]n official capacity suit against a municipal officer is simply another way of pleading the same action against the municipality itself." Plonka v. Borough of Susquehanna, 2017 WL 1036478, at *4 (M.D. Pa. Mar. 17, 2017), citing Kentucky v. Graham,

473 U.S. 159, 165 (1985). Thus, where, as here, the government entity is sued along with

municipal officers in their official capacities, the official capacity claim(s) against the individual

officers may be dismissed as redundant. <u>Burton v. City of Philadelphia</u>, 121 F.Supp.2d 810, 812

(E.D. Pa. Oct. 25, 2000). Accordingly, Plaintiff's official capacity claims against Defendants

Kissell, Clark, Downing, and Horton will be dismissed.

      **B.**        **Section 1983 Claims**

      In Count I of his amended complaint, Plaintiff claims that Defendants Gustafson and

Stevens violated his constitutional rights by, *inter alia,* "fabricating and/or manufacturing

evidence to obtain an arrest warrant against Plaintiff" that "led to Plaintiff's arrest and Plaintiff

being accused of a crime." (ECF No. 3, at ¶ 48a-b). In particular, Plaintiff alleges that said

Defendants knew or should have known that the individual depicted in the Young and vice

videos was not Plaintiff, inappropriately encouraged others to misidentify Plaintiff as the

individual in the videos, and withheld evidence that would have led to dismissal of the charges

against Plaintiff. (<u>Id</u>. at ¶ 48d-h).

      Similarly, in Count IV of his amended complaint, Plaintiff claims that Defendants Kissell

and Clark violated his constitutional rights by, *inter alia,* "falsely identifying Plaintiff,"

"[p]roviding illegal and improper witness against Plaintiff," and "knowingly providing

misidentification of the Plaintiff," all with the knowledge that their "independent

misidentification would support an arrest warrant leading to the arrest and incarceration of

Plaintiff for a crime he did not commit." (ECF No. 3, at ¶ 63a-d).

      Each of the foregoing claims is construed as a fabricated evidence claim, which the Third

Circuit has recognized as a standalone claim under the procedural due process component of the

Fourteenth Amendment. <u>DeForte v. Borough of Worthington</u>, 364 F.Supp.3d 458, 480 (W.D. Pa. 2019), <u>citing</u> <u>Black v. Montgomery Cty.</u>, 835 F.3d 358, 369 (3d Cir. 2016); <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 294 (3d Cir. 2014). Such a claim stands alone because it need not be tied to a malicious prosecution claim. <u>Halsey,</u> 750 F.3d at 292. To establish a fabricated evidence claim, a plaintiff must show there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." <u>Black</u>, 835 F.3d at 372. However, "there is a 'notable bar' for determining whether evidence was fabricated." <u>Id</u>.

> [T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong. Therefore, for example, a witness's misidentification should not be regarded as a fabrication in the absence of persuasive evidence supporting a conclusion that the proponents of the evidence were aware that the identification was incorrect, and thus, in effect, offered the evidence in bad faith.

<u>Halsey</u>, 750 F.3d at 295. <u>See</u> <u>also</u> <u>Boseman v. Upper Providence Township,</u> 680 Fed. Appx. 65, 70 (3d Cir. 2017) ("[B]ecause we require 'persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith,' we would look for allegations describing such evidence in a pleading designed to survive a motion to dismiss") (quotation omitted); <u>Sledge v. Three Unknown Officers of City of Erie Police Dept.,</u> 2023 WL 4034217, at *6 (W.D. Pa. May 8, 2023) (finding that, due to the absence of any allegations indicating that the defendants "offered the evidence in bad faith," plaintiff was unable to sustain his fabrication of evidence claim).

Here, Plaintiff has alleged, *inter alia*, that "Defendants Gustafson, Stevens, Kissell, and Clark either were not familiar enough with Plaintiff to identify him as the person pictured in the

still photograph, or in the alternative, falsely identified [Plaintiff] as the person pictured knowing that this was inaccurate," and that Defendant Gustafson "used the clearly mistaken identification as an allegation in the Affidavit of Probable Cause…." (ECF No. 3, at ¶¶ 30-31). These allegations are minimally sufficient to state a Fourteenth Amendment claim of fabricated evidence at the pleading stage.[2]

Nonetheless, both the Erie Defendants and the Erie County Defendants contend that Defendants Gustafson, Stevens, Kissell, and Clark, are entitled to qualified immunity from liability under Section 1983. (ECF No. 8, at pp. 17-20; ECF No. 11, at pp. 8-11).

Qualified Immunity is an affirmative defense for government officials subject to §1983 actions which operates to shield government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Kunkle v. Naugle, 660 Fed. Appx. 132, 135 (3d Cir. 2016) citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government

---

2

The Court notes that the Erie Defendants have sought dismissal of Plaintiff's claim against Defendant Stevens for his lack of personal involvement in any constitutional violation because his only involvement in this matter was his identification of Plaintiff from the still photograph circulated by Defendant Gustafson.. (ECF No. 8, at pp. 6-7). However, to the extent Plaintiff has alleged that this identification was made in bad faith, Defendant Stevens' personal involvement has been sufficiently implicated at the pleading stage. The Erie Defendants alternatively argue that Defendant Stevens' identification of Plaintiff dd not involve state action under Section 1983 because Defendant Stevens "did not exercise any power possessed by him as a police officer." (Id. at p. 13). This argument is specious, at best. Defendant Stevens' identification was offered in response to his receipt of the still photo from Defendant Gustafson, which he received only by virtue of his position as a police officer. As such, the identification was clearly offered in conjunction with a police investigation and was, thus, closely connected to a state action. The Erie Defendants argue further that Defendant Stevens is entitled to absolute witness immunity, which protects a police officer who provides testimony as a witness in a criminal proceeding. Briscoe v. LaHue, 460 U.S. 325 (1983); Williams v. Hepting, 844 F.2d 138, 140-41 (3d Cir. 1988), cert. denied 488 U.S. 851 (1988). However, as the Erie Defendants acknowledge, no court has yet extended absolute witness immunity "to non-testimonial, out-of-court statements given by a witness such as identifying a criminal defendant from a photograph or video." (ECF No. 8, at p. 15). Nonetheless, Defendants urge the Court to do so here. The Court is not so inclined.

official is not entitled to qualified immunity if "at the time of the challenged conduct, the contours of the right were sufficiently clear that every reasonable official would have understood that what he was doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). "We do not require a case directly on point, but existing precedent must have placed a statutory or Constitutional question beyond debate." Id. 'The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" Mullenix v. Luna, 577 U.S. 7, 12 (2015) (citation and internal quotation marks omitted).

As discussed above, the contours of a fabricated evidence claim under the procedural due process component of the Fourteenth Amendment were clearly defined at the time of Defendants' alleged conduct in this case. See DeForte, 364 F.Supp.3d at 480, citing Black, 835 F.3d at 369;  Halsey, 750 F.3d at 294. Thus, Defendants are unable to establish that they are entitled to qualified immunity from Plaintiff's Section 1983 claims.

Based on the foregoing, therefore, Defendants' motions to dismiss Counts I and IV of Plaintiff's amended complaint will be denied.

### C.    False Arrest and Imprisonment

In Count III of the amended complaint, Plaintiff brings a false arrest and imprisonment claim against the Erie Defendants, alleging that said Defendants "violated [their] duty to Plaintiff as a citizen by falsely arresting him without probable cause, and/or arresting him with a warrant that was obtained illegally," which "resulted in the Plaintiff's incarceration and imprisonment for over one year despite the fact that Plaintiff was improperly arrested without probable cause…" (ECF No. 3, at ¶¶ 58-59).

To state a claim for false arrest, a plaintiff must establish: "1) there was an arrest; and

9

2) the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). Similarly, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir.1995).

To determine whether a law enforcement officer had probable cause to arrest, the district court must necessarily "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause[.]" Maryland v. Pringle, 540 U.S. 366, 371 (2003), quoting Ornelas v. United States, 517 U.S. 690, 696 (1996). See also Illinois v. Gates, 462 U.S. 213, 232 (1983) (the existence of probable cause is determined by looking at the totality of the circumstances). The existence of probable cause is to be considered via a "common sense approach" based on the totality of the circumstances, Paff v. Kaltenback, 204 F.3d 425, 436 (3d Cir. 2000), and viewed from the perspective of an objectively reasonable police officer, Pringle, 540 U.S. at 371. Thus, in general, "the existence of probable cause is a factual issue." Groman, 47 F.3d at 635.

Where, as here, an arrest is made pursuant to a warrant, "[a] plaintiff may succeed in a § 1983 action for false arrest ... if [he] shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such

10

statements or omissions are material, or necessary, to the finding of probable cause.'" <u>Wilson v. Russo</u>, 212 F.3d 781, 786–87 (3d Cir.2000), <u>quoting</u> Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997). This is precisely what Plaintiff alleges here. In particular, Plaintiff alleges that Defendants Gustafson and Stevens, among others, "falsely identified [Plaintiff] as the person pictured [in the still photo obtained from the vice video] knowing that this was inaccurate," and that "Defendant Gustafson used the clearly mistaken identification as an allegation in the Affidavit of Probable Cause which led to warrant of arrest being issued for Plaintiff…." (ECF No. 3, at ¶¶ 31-32). Such allegations are sufficient to raise an issue as to the existence of probable cause at the pleading stage. Thus, the Erie Defendants' motion to dismiss Count III of the amended complaint will be denied.

### D.     Malicious Prosecution

In Count VI of his amended complaint, Plaintiff asserts a claim of malicious prosecution against Erie County Defendants Downing and Horton and Erie Defendants Gustafson and Stevens.

A claim of malicious prosecution requires a showing that: (1) the defendant initiated criminal proceedings, (2) the criminal proceedings ended in the plaintiffs favor; (3) the proceeding was initiated without probable cause, (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. <u>Dibella v. Borough of Beechwood</u>, 407 F.3d 599, 601 (3d Cir. 2005).

The Erie Defendants seek to dismiss this claim against Defendants Gustafson and Stevens, arguing that they had probable cause to initiate criminal proceedings against Plaintiff;

11

however the Court has already determined that Plaintiff's allegations are sufficient to raise an issue as to whether probable cause existed for Plaintiff's arrest. Thus, the Erie Defendants' motion to dismiss Plaintiff's malicious prosecution claim will be denied.

As to Defendants Downing and Horton, the Erie County Defendants argue that they are entitled to absolute prosecutorial immunity.

A prosecutor engaged in "activities intimately associated with the judicial phase of the criminal process" is absolutely immune from section 1983 money damages. Imbler v. Pachtman, 424 U.S. 409, 420 (1976). Prosecutors engaged in solely administrative or investigative duties are not likewise immune. Rose v. Bartle, 871 F.2d 331, 343 (3d Cir. 1989). Courts confronted with claims challenging a prosecutor's actions must utilize a functional analysis to determine whether or not the prosecutor acted within his or her "judicial capacity" when attempting to apply absolute immunity. Ross v. Morgan, 638 F.2d 646, 648 (3d Cir. 1981). See also Rose, 871 F.2d at 343.

Actions that relate to the prosecutor's role as an advocate are "judicial" actions. Mancini v. Lester, 630 F.2d 990, 993 (3d Cir. 1980). For example, prosecutors are absolutely immune from claims for malicious prosecution, for solicitation of perjured testimony, and for conspiracy with state actors while engaged in an advocacy role. See Rose; Imbler; Ross. In fact, a prosecutor's duties extend beyond the actual filing of a lawsuit. In Imbler, the Supreme Court noted that "the duties of the prosecutor in his role as an advocate for the state involve actions preliminary to the initiation of a prosecution and action separate from the courtroom." Imbler, 424 U.S. at 431, n. 33. Thus, prosecutors are absolutely immune from liability for filing false charges or initiating a prosecution, Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992), or

for deciding not to initiate a prosecution, <u>Isley v. Bucks County</u>, 549 F. Supp. 160, 161 (E.D. Pa. 1982).

Here, Plaintiff argues that Defendant Downing is not entitled to prosecutorial immunity[3] because she failed to dismiss the criminal charges against Plaintiff despite having knowledge of the exculpatory evidence she was presented with. (ECF No. 14, at p. 24).[4] However, Defendant Downing's decision to "ignore" Plaintiff's exculpatory evidence and proceed with criminal prosecution was clearly a matter of prosecutorial discretion made within her role as an advocate in a judicial proceeding. Thus, the doctrine of prosecutorial immunity plainly applies to bar Plaintiff's claim of malicious prosecution against Defendant Downing, and such claim will be dismissed.

**E.     Section 1983 Claims v. Defendants Erie and/or Erie County**

Plaintiff has asserted four separate municipal liability claims under 42 U.S.C. § 1983 at Count II (against Defendant Erie) and at Counts V, VII, and IX (against Defendant Erie County). The first three of these claims (Counts II, IV, and VII) include identical language asserting that the relevant municipality "had, in effect, actual and/or defacto policies, practices, customs, and usages that were a direct and proximate cause of the unconstitutional conduct of individual

---

[3] Plaintiff has not opposed the Erie County Defendants' motion to dismiss Plaintiff's claim against Defendant Horton. (<u>See</u> ECF No. 14, at p. 23 n. 3). Since Defendant Horton's alleged actions were clearly judicial in nature, Plaintiff's malicious prosecution claim against her is barred by prosecutorial immunity and will be dismissed.

[4] Plaintiff makes this argument based primarily upon his application of the Eastern District Court's reasoning in <u>Nelling v. County of Delaware</u>, 2012 WL 3996113 (E.D. Pa. Sept. 11, 2012), a case that is plainly not on all fours with the present case. Specifically, unlike the present case, <u>Nelling</u> involved a qualified immunity argument raised by a probation officer in response to a false imprisonment claim. Thus, the Court's reasoning in <u>Nelling</u> has no helpful application here.

Defendants in this case…." (ECF No. 3, at ¶¶ 52, 66, 76). Similarly, Count IX alleges that Defendant Erie County "created, required or facilitated a policy or custom that caused the constitutional violations" of the John Doe prison officials. In addition, each count contains a claim that the relevant municipality failed to train, supervise, or discipline its officers:

- In Count II, Plaintiff alleges that Defendant Erie "failed to properly train, supervise, or discipline its police officers, including but not limited to, Defendants Gustafson and Stevens, concerning the correct practices in investigation of crimes, avoidance of racial profiling, proper assessment of probable cause, assembling and evaluating evidence to obtain an arrest warrant and an arrest, failing to share exculpatory evidence, and avoidance of improper and deficient police work." (ECF No. 3, at ¶ 53);

- In Count V, Plaintiff alleges that Defendant Erie County "failed to properly train, supervise, or discipline its probation officers including Defendants Kissell and Clark regarding identification of perpetrators during crime investigations, providing evidence to City of Erie Police Department for purposes of obtaining arrest warrants and properly confirming identification and evidence used against individuals for such purposes." (Id. at ¶ 67);

- In Count VII, Plaintiff alleges that Defendant Erie County "failed to properly train, supervise, or discipline its assistant district attorneys including Defendants Downing and Horton regarding proper procedure in handling exculpatory evidence, determining whether to pursue prosecution, understanding and evaluate[ng] sufficiency of evidence against a criminal defendant, exhibiting truth and candor to the Court and its officials and acting in a manner that did not violate the Constitutional rights of criminal defendants." (Id. at ¶ 77).

- In Count IX, Plaintiff alleges that Defendant Erie County violated Plaintiff's constitutional rights "by not properly hiring, training and controlling its employees such that they would or act in a manner in deliberate indifference to the Plaintiff's health and safety or otherwise violate the Plaintiff's constitutional rights as set forth under 14th amendment to the U.S. Constitution and Section 1983. (Id. at ¶ 93).

14

#### 1. Claims based upon Policy, Practice, or Custom

A municipality or other local government may be liable under Section 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S. at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. See Id.; Pembauer v City of Cincinnati, 475 U.S. 469, 480-81; Adickes v. S.H. Kress & Co.,398 U.S. 144, 167-68 (1970).

Here, both Defendants Erie and Erie County argue that Plaintiff's municipal liability claims based upon a policy, practice, or custom must be dismissed because Plaintiff has failed to identify a specific policy or custom that allegedly caused the alleged constitutional deprivation. The Court agrees. Rather than identifying an existing policy, practice, or custom of the municipal Defendants, Plaintiff simply recites boilerplate language alleging that a policy existed, without specification. This is insufficient to state a cognizable municipal liability claim under Monell. See McCall v. City of Phila., 396 F. Supp. 3d 549, 559 (E.D. Pa. 2019) ("Other than pleading facts that are specific to Plaintiffs, the inclusion of the conclusory terms 'pattern, practice and custom' are simply threadbare recitations of the elements of their claims."); Cooper v. City of Chester, 810 F. Supp. 618, 623 (E.D. Pa. 1992) ("[A] § 1983 complaint must do more than recite the necessary elements of policy, practice or custom, causation, and deliberate indifference")

15

## 2. "Failure to train" claims

As for Plaintiff's "failure to train" claims against the municipal Defendants, the Supreme Court has recognized that, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. Id., citing Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell").

A municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the right of persons with whom the [untrained employees] come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of County Comm'rs of Bryan Cnty v. Brown, 520 U.S. 397, 410 (1997). Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. Id. at 407. The municipality's "'policy of inaction'" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the [municipality] itself to violate the Constitution."

Canton, 489 U.S. at 395. A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities …" Id. at 392; see also Pembauer, 475 U.S. at 483 ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ... "). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 563 U.S. at 62.

Here again, the Plaintiff's failure to train claims fail because he simply parrots the legal standards for municipal liability under § 1983 without pleading sufficient supporting facts. In particular, Plaintiff alleges no facts that would support an inference that either municipal Defendant was on notice of a risk of its officers committing constitutional violations and deliberately ignored that risk. See Wood v. Williams, 568 Fed. Appx 100, 105 (3d Cir. 2014). Indeed, Plaintiff does not allege any facts about training or supervision at all. See Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir. 1988) ("Mere conclusory allegations ... that the defendants deliberately elected not to train are not enough to support a constitutional claim."); Cooper v. Chester, 810 F. Supp. 618, 623 (E.D. Pa. 1992) (pleading insufficient where plaintiff alleged a city "as a matter of policy and practice, has, with deliberate indifference failed to adequately discipline, train or otherwise direct police officers concerning the rights of citizens, thereby causing the defendant officers in this case to engage in the unlawful conduct"); McCall, 396 F. Supp. 3d at 560 (allegations devoid of specific factual support for assertions that City failed to train, supervise and discipline employees insufficient to plead deliberate indifference).

Based on the foregoing, therefore, Plaintiff's municipal liability claims set forth in

Counts II, V, VII, and IX of the amended complaint will be dismissed in their entirety.

### F.   Conspiracy

In Count VIII (incorrectly identified as "Count IIIV") of the amended complaint, Plaintiff asserts a claim of "conspiracy to violate civil rights" against all Defendants. In particular, Plaintiff alleges, *inter alia*, that Defendants "conspired, assisted and facilitated violation of the Plaintiff's civil rights as set forth in Counts I through VII of [the amended complaint] by acting in concert with each other in the actions set forth therein." (ECF No. 3, at ¶ 83). Defendants argue that Plaintiff's complaint lacks the particularity required to establish a cause of action for civil conspiracy. (ECF No. 8, at p. 23; ECF No. 11, at p. 18-20). The Court agrees.

"To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159. 179 (3d Cir. 2010); Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir.1989). Here, the amended complaint lacks any factual allegations as to the time, place or specific objects of the alleged conspiracy, which are required for a claim of conspiracy to survive a motion to dismiss. See Ulrich v. Corbett, 614 Fed. Appx. 572, 574-75 (3d Cir. 2015). Instead the amended complaint sets forth merely "conclusory allegation[s] of agreement at some unidentified point [, which] does not supply facts adequate to show illegality." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). For instance, sets forth a list of alleged actions that were taken by Defendants, most of which consist of conclusory allegations, such as "targeting or singling out Plaintiff to frame him for a crime" and "participating in manufacturing and creating evidence to support the issuance of an arrest warrant for Plaintiff with knowledge that this

18

constituted a misrepresentation to a Court of law." (Id. at 83a, e). Thus, the complaint falls far short of the pleading standard required to state a cognizable claim of conspiracy, and Defendants' motions to dismiss this claim will be granted.

**G.**     **Section 1983 Claim v. John Doe prison personnel**

In Count IX of the amended complaint, Plaintiff asserts a Section 1983 claim against unnamed John Doe Defendants for deliberate indifference to his health and safety in violation of the Fourteenth Amendment. This claim arises from the alleged mistreatment of Plaintiff by prison officials at ECP during his incarceration as a pretrial detainee from on or about July 4, 2020 to on or about August 13, 2021. This claim will be allowed to proceed subject to Plaintiff's identification of the John Doe Defendants and the amendment of the complaint to state such claim more particularly by including specific allegations pertaining to each identified Defendant, within forty-five (45) days.

An appropriate Order follows.